STATE v. CRUTCHFIELD

[160 N.C. App. 528 (2003)]

———————————

STATE OF NORTH CAROLINA v. ERIC MONTESE CRUTCHFIELD, Defendant

No. COA02-1429

(Filed 7 October 2003)

**1. Appeal and Error; Search and Seizure— motion to suppress—no objection at trial—timing of search—trial court findings binding**

The denial of a first-degree murder defendant's motion to suppress evidence seized from his home was not preserved for appeal because defendant did not object to the evidence when it was offered at trial. Even so, defendant could not have prevailed because there was evidence supporting the trial court's resolution of a conflict about whether a search began before the warrant arrived.

**2. Confessions and Other Incriminating Statements— waiver of rights—effects of medication**

The trial court's findings concerning the medication given to defendant at a hospital and his waiver of rights were supported by testimony and are binding on appeal.

### 3. Evidence— identification—child's testimony—admissible

A child's testimony that the person who shot him in the night was a shadow the size and shape of his daddy was properly admitted in defendant's first-degree murder and assault prosecution. The testimony was not an identification of defendant, and issues concerning the reliability of the child's statements were for the jury.

Appeal by defendant from judgments entered 11 January 2002 by Judge Howard E. Manning in Durham County Superior Court. Heard in the Court of Appeals 19 August 2003.

*Attorney General Roy Cooper, by Assistant Attorney General H. Dean Bowman and Assistant Attorney General David J. Adinolfi II, for the State.*

*Mary March Exum, for defendant-appellant.*

HUDSON, Judge.

A jury found defendant guilty of first degree murder and assault with a deadly weapon with intent to kill inflicting serious injury. The court sentenced defendant to life imprisonment without possibility of parole for the first degree murder and 92 to 120 months for the assault with a deadly weapon with intent to kill. Defendant appeals.

### Background

Victims Briana and Ricardo Crutchfield were the children of defendant and his ex-wife, Pamela Beasley McClary. Ricardo was born in March 1989 and Briana in October 1992. McClary and defendant were divorced in June 1994. The children were in their mother's custody, but visited with their father on weekends whenever they wished to, rather than on a set visitation schedule.

On Saturday, 13 February 1999, defendant picked up nine-year-old Ricardo and six-year-old Briana from McClary's father's home for a weekend visit. McClary spoke to Ricardo on the telephone on Sunday. Defendant was to return the children to McClary's father's home by 5:30 a.m. on Monday, 15 February 1999. On that day, McClary arrived at her father's home at 5:30 a.m., but defendant and the children were not there. When they had still not arrived at 5:46 a.m., McClary called defendant's home. Ricardo answered the phone and said, "Mama, I don't know what happened, I'm bleeding," and told his mother he could not wake his sister.

McClary rushed to defendant's home and let herself inside with a key. In an upstairs bedroom, she found Briana lying on a waterbed soaked in blood. She believed both children had been shot, and called 911. Ricardo told McClary that he thought his daddy had hit him with a belt buckle. The police arrived at defendant's home and ambulances took the children to different hospitals. While McClary was at Duke University Medical Center with Ricardo, she received word from Durham Regional Hospital that Briana had died.

In the meantime, the police began their investigation at defendant's home. Neither McClary nor the police had seen defendant. They eventually discovered him at about 7:50 a.m. hiding in the crawlspace beneath the house. When officers found him, defendant was bleeding from his own injuries and said he had been shot. Defendant was taken to Durham Regional Hospital.

Before trial, the court held a voir dire hearing on defendant's motions to suppress several pieces of evidence, including items seized at his home and statements he gave police at the hospital. Witnesses included investigating officers and hospital personnel. The court denied the motions, and witnesses gave similar testimony at trial.

The evidence showed that officers executed a search warrant for defendant's home at approximately 9:30 a.m. The witnesses' testimony conflicted as to the exact time the search warrant arrived and the times when various items were collected from the house. Police ID technician Bruce Preiss had written in his reports for that day that the search warrant had arrived at 10:30 a.m. However, Preiss testified that the report was incorrect, and that he had actually arrived at defendant's home at approximately 8:30 a.m., that the warrant arrived at about 9:30 a.m. and that his search began at 9:50 a.m. Preiss also acknowledged other mistakes in his report about the time and place certain items were collected from the home.

Defendant received treatment for his injuries and medication while at the hospital. At approximately 3:30 p.m., Dr. Larkin Daniels took defendant off the ventilator and entered an order allowing the police to question defendant. Detective Harris of the Durham Police Department spoke to a nurse at the hospital about defendant's condition to determine whether he could be interviewed. Defendant indicated that he wanted to talk to the detective, who then advised him of his Miranda rights. Defendant signed a rights waiver form at 5:25

p.m. and then gave a statement to the detective. Defendant signed the statement after Detective Harris read it back to him.

At trial, several medical personnel and experts testified about defendant's mental state and level of medication at the time of the statement. Additional details will be provided in the discussion of the motions.

Nine-year-old Ricardo initially resisted talking about what had happened to him and his sister at his father's home. Four months passed before Ricardo expressed a willingness to discuss the events of 15 February 1999. In June 1999, McClary contacted police investigators who attempted to interview him, but Ricardo once again declined to talk. Ricardo received continuing therapy following the shootings, and eventually he began to discuss the events of 15 February 1999.

At trial, Ricardo testified that he had been awakened in the night by a "pow" and described seeing a shadow the same size and shape as his daddy. He called out "Dad," but the shadow kept walking. He then heard a scream and another "pow." Ricardo's statement to investigators corroborated his in-court testimony.

The jury convicted defendant of the first degree murder of Briana and assault with a deadly weapon with intent to kill inflicting serious injury on Ricardo.

Analysis

I.

[1] Defendant first assigns error to the trial court's denial of his motion to suppress the evidence collected from his home. In his motion to suppress, defendant argued that the evidence collection began before the search warrant arrived at defendant's home. The Property Incident Report completed by technician Preiss on 15 February 1999 indicated that a number of items, including the murder weapon, had been collected at 8:30 a.m. The search warrant was issued at 9:00 a.m. on 15 February 1999, and executed at 9:30 a.m. The court conducted a voir dire hearing out of the jury's presence to hear from technician Preiss and others on this issue.

At the hearing, Preiss verified his signature on the report, but testified that he had incorrectly entered the time on the report. Preiss stated that he had actually collected the evidence in question at approximately 9:50 a.m., rather than at 8:30 a.m. Detective Harris also

testified at the hearing. Harris testified that the warrant had arrived at defendant's home at 9:30 a.m, but that the search of the home did not begin until 10:50 a.m. He stated that Preiss was mistaken in his voir dire testimony that the items were collected at 9:50 a.m. Harris further testified that other than the mistakes regarding time, Preiss's report was an accurate account of the evidence collection that morning.

Following this hearing, the trial court found as facts that the warrant had been issued at 9:00 a.m., had arrived at defendant's home at 9:30 a.m., and that the search itself had begun at approximately 9:52 a.m, and thereupon denied the motion to suppress. When the state introduced the evidence at trial, defendant's trial counsel did not object. Defendant now argues that the trial court erred in denying the motion to suppress and admitting the evidence and that this error entitles him to a new trial.

A pretrial motion to suppress is a type of motion in limine. *State v. Golphin*, 352 N.C. 364, 405, 533 S.E.2d 168, 198 (2000), *cert. denied* 532 U.S. 931, 149 L. Ed. 2d 305 (2001). Such a "pretrial motion to suppress is not sufficient to preserve for appeal the question of the admissibility of [evidence when defendant] did not object at the time the [evidence] was offered." *Id.* Here, defendant did not object to the evidence when it was offered for admission at trial, and thus this assignment of error is not properly before this Court.

However, even if defendant had properly preserved this issue for our review, he could not prevail. This Court's review of the denial of a motion to suppress is "limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Further, the trial court's resolution of a conflict of evidence is binding on appeal, and its findings of fact are conclusive if they are supported by evidence. *State v. Brewington*, 352 N.C. 489, 498, 532 S.E.2d 496, 501-02 (2000), *cert. denied* 531 U.S. 1165, 148 L. Ed. 2d 992 (2001).

Here, the evidence regarding the timing of the execution of the search warrant and the collection of evidence was conflicting. The trial court resolved conflicts in the voir dire testimony in his findings of fact, based on the testimony of technician Preiss and Detective Harris. The findings of fact about the timing of the warrant and

search are supported by evidence presented at the hearing and are thus conclusive on appeal. The findings, in sum, support the conclusions of law and the ruling of the trial court, which were proper in light of the totality of the circumstances as found by the court. *State v. Breeze*, 130 N.C. App. 344, 353, 503 S.E.2d 141, 148, *disc. review denied* 349 N.C. 532, 526 S.E.2d 471 (1998).

II.

[2] Defendant next argues that he is entitled to a new trial because the medication he received at the hospital prevented him from knowingly and intelligently waiving his Miranda rights before giving his statement to Detective Harris at 5:30 p.m. on 15 February 1999. We disagree.

The court conducted a voir dire hearing on defendant's motion to suppress the statement. At the hearing, the court heard testimony from a number of experts and medical personnel. Defendant called Registered Nurse Joyce Ann Davis to testify about the effects of intravenous morphine. Dr. Holly Rogers, a psychiatrist, testified that the morphine would have made defendant "out of it" and would have affected his thinking. She also testified that defendant's statement to Detective Harris was partially coherent, but also very disorganized. Dr. Rogers noted that morphine can cause patients to fantasize.

The State called Dr. Walter Burns, a general surgeon, in rebuttal. Dr. Burns gave his opinion that defendant's ability to make rational decisions would not have been affected by the morphine he had received. Two nurses also testified for the State about defendant's rationality and coherence near the time of the statement. Detective Harris testified that defendant had appeared to understand his Miranda rights and to have had a clear mind when he chose to give his statement. The trial court did not rule immediately after the hearing.

Dr. Larkin Daniels, the physician who had treated defendant at the hospital on the day of the shootings, testified that he had entered an order allowing the police to interview defendant several hours prior to the statement being taken. At that time, defendant was alert and completely awake. Following Dr. Daniels' testimony, the trial court denied defendant's motion to suppress the statement, and the statement was later admitted before the jury.

As previously noted, the trial court's resolution of conflicting evidence is binding on appeal, and the court's findings of fact are con-

clusive if they are supported by evidence. *Brewington,* 352 N.C. at 498, 532 S.E.2d at 501-02. This standard of review applies to a trial court's determination of the voluntariness of a confession. *State v. Payne,* 327 N.C. 194, 208-09, 394 S.E.2d 158, 166 (1990), *cert. denied* 498 U.S. 1092, 112 L. Ed. 2d 1062 (1991). Here, the trial court made extensive findings of fact about the defendant's medication and hospitalization which are supported by the testimony at the hearing. The resolution of the conflicting opinions and testimony presented in that hearing were the province of the trial court, and we will not now disturb it on appeal. In addition, these findings fully support the conclusions of law and ruling on the motion which was proper in light of the circumstances as a whole. *Breeze,* 130 N.C. App. at 353, 503 S.E.2d at 148.

III.

[3] In defendant's final assignment of error, he argues that the trial court erred in its denial of his motion to suppress the in court and prior "identifications" of defendant by his son Ricardo. We disagree.

Defendant based his motion on Ricardo's age and dependence on his mother (a witness for the State), as well as his previous statements about what had happened to him the night of the shootings. The trial court held a voir dire hearing on this motion during trial.

Ricardo's mother testified about his reluctance to talk about the shootings and about his interviews and discussions with police and district attorneys. Defendant called a child psychologist who testified that children are highly suggestible because they like to please adults, and gave her opinion that Ricardo may have used information he gained after the shootings to "fill in the blanks" in his memories of 15 February 1999. The motion to suppress was ultimately denied and Ricardo was allowed to testify that the person who shot him was the same size and shape as his daddy.

Contrary to defendant's assertions, we do not consider Ricardo's testimony to have been an identification of his father; rather, he merely described the person who shot him as someone of the same size and shape. Further, defendant's arguments about Ricardo's credibility and suggestibility, and the reliability of his statements were matters of weight for the jury rather than issues of admissibility. *See State v. Small,* 131 N.C. App. 488, 491, 508 S.E.2d 799, 801 (1998).

The jury is the sole judge of the credibility of each witness and must decide whether to believe the testimony of any particular witness. *State v. Green*, 129 N.C. App. 539, 545, 500 S.E.2d 452, 456 (1998), *affirmed* 350 N.C. 59, 510 S.E.2d 375 (1999). The trial court properly allowed Ricardo's testimony about what he saw the night of the shootings to be presented and gave defendant the opportunity to argue to the jury about its weight. We overrule this assignment of error.

### Conclusion

For the reasons set forth above, we find no error in defendant's conviction.

No error.

Judges WYNN and McGEE concur.