STATE v. SUMMEY

[228 N.C. App. 730 (2013)]

STATE OF NORTH CAROLINA
v.
DARRELL WAYNE SUMMEY

No. COA12-1405

Filed 6 August 2013

1. **Rape—statutory rape of child less than 13 years old—motion to dismiss—sufficiency of evidence—victim's age**

   The trial court did not err by failing to dismiss the charge of statutory rape of a child less than 13 years of age based on alleged insufficient evidence that the victim was less than 13 years old at the time of the crime. There was substantial evidence from which the jury could conclude that the victim was raped by defendant when she was 12 years old.

2. **Rape—statutory rape of child less than 13 years old—court's impermissible opinion on contested element—prejudicial error**

   Defendant's conviction for the first-degree statutory rape of a child when she was less than 13 years old was reversed. The trial court impermissibly expressed an opinion concerning a contested element of the offense to be decided by the jury, that the victim was less than 13 years old at the time of the alleged statutory rape, and thereby prejudiced defendant. Defendant was entitled to a new trial on this charge.

3. **Criminal Law—prosecuting witnesses referred to as victims—no impermissible expression of opinion**

   The trial court did not impermissibly express an opinion regarding the prosecuting witnesses in a multiple sexual offenses case by repeatedly referring to them as victims.

4. **Jury—deliberations—continuation despite being deadlocked—no coerced verdict**

   The trial court did not err in a multiple sexual offenses case by allegedly coercing a unanimous verdict from the jury through its responses to the jury's questions about whether they had to continue deliberations despite appearing to be deadlocked. Considering the totality of circumstances, there was nothing in the record indicating that the trial court coerced a verdict.

**5. Evidence—prior crimes or bad acts—domestic violence**

Defendant failed to show any prejudice in a multiple sexual offenses case from the trial court's denial of his motion *in limine* regarding the evidence of defendant's prior acts of domestic violence.

Appeal by defendant from judgments entered 9 April 2012 by Judge Laura J. Bridges in Buncombe County Superior Court. Heard in the Court of Appeals 8 May 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Jane Rankin Thompson, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Daniel Shatz, for defendant-appellant.*

HUNTER, Robert C., Judge.

Defendant Darrell Wayne Summey appeals from judgments entered after a jury found him guilty of multiple sex crimes committed against two of his stepdaughters and guilty of possession of a firearm by a felon. Defendant contends the trial court erred: by denying his motion to dismiss the charge of first-degree statutory rape; by improperly expressing an opinion concerning an element of the statutory rape charge and by referring to the prosecuting witnesses as victims during the jury instructions; by improperly coercing a verdict from the jury; and by allowing the State to introduce evidence of prior acts of domestic violence committed by defendant. After careful review, we conclude the trial court improperly corroborated an element of the offense of statutory rape as to one of the alleged victims, and defendant is entitled to a new trial on that charge. We find no error as to defendant's remaining convictions.

**Background**

In April 2010, defendant lived with his wife Donna Summey ("Donna"). The couple had a nineteen year-old daughter, Rachel. Donna had three other daughters from her marriage to her first husband: Sarah, Jane, and Debbie.[1] Sarah was 20 years old, separated from her husband, and she and her two children were living with defendant and Donna.

On the morning of 20 April 2010, defendant began drinking alcohol, left the home, and returned around 12:30 a.m. the next morning.

---

1. Sarah, Jane, and Debbie are pseudonyms used to protect the identity of the victims.

Sarah had also been out during the day, but she returned home before defendant and went to sleep in a bedroom with her sons. Donna awoke later and heard Sarah saying, "Mom." Donna went into Sarah's bedroom where she found defendant lying on top of Sarah with his pants down. Sarah was crying, "No, Darrell, no." Defendant got off of Sarah, pulled up his pants, went to the living room, and passed out on the couch. As defendant slept, Donna called the police and stood over him with a butcher knife while waiting for the police to arrive. Sarah, meanwhile, left the home through a window and went to her sister's house. When the police arrived they arrested defendant and confiscated two guns that were in the home.

Detective David Shroat of the Buncombe County Sheriff's Department interviewed defendant at the jail. Defendant told the police that he came home drunk that night and asked Sarah to have sex with him. In her statement to the police, Sarah stated that she awoke to find defendant putting his penis inside of her while he was holding down one of her arms.

In September 2011, Detective Shroat interviewed Sarah, Jane, and Debbie, and each stated that they had been sexually abused by defendant when they were children. Sarah told the detective about two incidents of abuse which occurred when she was a child. Later at trial, Sarah testified that defendant "rubbed his private area" on hers when she was 12 years old, but did not penetrate her. Sarah also testified that after that incident defendant had vaginal intercourse with her.

When the abuse allegedly occurred, Sarah did not immediately tell anyone about it, but eventually she told her Debbie, her mother, and her grandmother. Sarah testified that she went to live with her father, Gerald Riddle, "a few months" after the alleged rape, "probably the summer of 2002." Sarah's father testified that Sarah came to live with him in the summer of 2004, a couple of weeks before he had a car accident in which he was seriously injured. Either Sarah or her father told the Department of Social Services about the alleged rape, at which point DSS became involved with the family. DSS interviewed Sarah about her allegations. At trial, Sarah testified that the interview with DSS occurred in 2002 or 2003. However, defendant's counsel showed Sarah a report from DSS about that interview, which stated that the interview occurred on 8 June 2004. When Sarah was asked about the discrepancy between her testimony and the DSS report, Sarah stated: "I thought it was in 2002. I guess it was 2003——I mean '4." Sarah was born on 23 October 1989, and she turned 13 on 23 October 2002.

Defendant was charged with the second-degree rape of Sarah and possession of a firearm by a felon arising from for the events on 30 April 2010. Additional charges against defendant relating to Sarah included first-degree statutory rape of a child less than 13 years of age and taking indecent liberties with a child on or about 2000 to 2001. As for crimes against Jane, defendant was charged with first-degree statutory sexual offense with a child less than 13 years of age and four counts of taking indecent liberties with a child on or about 1992 and 1993.

The jury returned guilty verdicts on all charges. Defendant was sentenced to consecutive sentences of 22-27 months for possession of a firearm by a felon; 127-162 months for the second-degree rape of Sarah; 31-38 months for indecent liberties with a child, Sarah, and 480-585 months imprisonment for the first-degree rape of Sarah; four sentences of three years imprisonment each for indecent liberties with a child, Jane; and life imprisonment for the first-degree sex offense against a child, Jane. Defendant appeals.

## Discussion

### I. Motion to Dismiss

[1] Defendant contends that the trial court erred in failing to dismiss the charge of statutory rape of a child less than 13 years of age as there was insufficient evidence that the alleged victim, Sarah, was less than 13 years old at the time of the alleged crime. We disagree.

We review the trial court's denial of a motion to dismiss *de novo*. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). In doing so, we must determine " 'whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense.' " *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). When considering defendant's motion to dismiss, "the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995).

Defendant contends that Sarah "corrected" or "retracted" her testimony that she was 12 years old when the alleged rape occurred. Sarah testified that she was interviewed by DSS several months after the rape. Initially, Sarah testified that the interview with DSS occurred in 2002 or 2003. But, when provided a copy of the DSS report from her interview, which stated that the interview occurred on 8 June 2004, she testified: "I thought it was in 2002. I guess it was 2003——I mean '4." Because Sarah was born on 23 October 1989, she turned 13 on 23 October 2002.

Defendant argues this testimony constituted an acknowledgment by Sarah that her earlier testimony that she was 12 years old at the time of the alleged rape was incorrect. Therefore, defendant contends, there was no substantial evidence that Sarah was less than 13 years old at the time of the alleged rape. Because the age of the victim is an essential element of the crime, defendant argues that the trial court should have granted his motion to dismiss the charge. *See State v. Mueller*, 184 N.C. App. 553, 573, 647 S.E.2d 440, 454 (2007) (concluding that, where the prosecuting witness "stated unequivocally" that she was 13 years old when the defendant began having sexual intercourse with her, the trial court erred in denying the defendant's motion to dismiss the charge of first-degree statutory rape for insufficient evidence that the alleged victim was less than 13 years of age at time of the rape).

The State contends that Sarah did not recant her testimony about her age. Rather, Sarah's testimony created a contradiction in the evidence regarding an issue of fact that the jury was to resolve.

> When a defendant moves to dismiss, "[o]nly evidence favorable to the State is considered and *contradictions, even in the State's evidence*, are for the jury and do not warrant a granting of the motion. When so considered, the motion should be denied when there is substantial evidence, direct, circumstantial or both from which the jury could find that the offense charged was committed and that the defendant perpetrated the offense . . . ."

*State v. Register*, 206 N.C. App. 629, 645, 698 S.E.2d 464, 475 (2010) (concluding a motion to dismiss was properly denied where the prosecuting witness provided conflicting testimony as to the dates of the alleged crimes) (citation omitted) (emphasis added).

We conclude that a reasonable interpretation of Sarah's testimony is that she was mistaken as to the date of the DSS interview, not the date of the alleged rape. Furthermore, the transcript reveals that Sarah did testify that she was 12 years old at the time defendant vaginally penetrated

her with his penis. Thus, there was substantial evidence from which the jury could conclude that Sarah was raped by defendant when she was 12 years old, so the trial court did not err in denying defendant's motion to dismiss. Defendant's argument is overruled.

## II. Expression of Opinion by the Trial Court

### A. Age of Victim

[2] Next, defendant argues that the trial court impermissibly expressed an opinion concerning a contested element of the offense that was to be decided by the jury and thereby prejudiced defendant. We agree.

During deliberations, the jury sent a note to the trial court in which it asked, "May we please have the date and age of [Sarah] when she was raped the first time regarding the first-degree rape?" The trial court called the jury into the courtroom and told the jurors that the information they sought was in Sarah's testimony and that it was their duty to recall that testimony from memory. Juror number 5 then immediately asked a second question: "[W]ould it be an accurate statement that the Court would not be able to charge him with that particular charge if it were not in corroboration with the age reference?" The trial court answered: "You're correct."

Defendant contends that the trial court's response to the juror's question improperly implied that the trial court had corroborated that Sarah's age satisfied the age element of the charge——that Sarah was less than 13 years of age at the time of the alleged rape. Although defendant did not object to the trial court's statement, we may still review the alleged error. *See State v. Ashe*, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985) ("[W]hen a trial court acts contrary to a statutory mandate and a defendant is prejudiced thereby, the right to appeal the court's action is preserved, notwithstanding defendant's failure to object at trial.").

> It is well established by our case law and statutory enactments that it is improper for a trial judge to express in the presence of the jury his opinion upon any issue to be decided by the jury or to indicate *in any manner* his opinion as to the weight of the evidence or the credibility of any evidence properly before the jury.

*State v. Blackstock*, 314 N.C. 232, 236, 333 S.E.2d 245, 248 (1985) (emphasis added) (citing N.C. Gen. Stat. § 15A-1222); N.C. Gen. Stat. § 15A-1232 (2011) (providing that when instructing the jury, "the judge shall not express an opinion as to whether or not a fact has been proved . . . ."). However, the burden to show prejudice rests with the defendant, and

every improper comment by the trial court does not warrant reversal. *Blackstock*, 314 N.C. at 236, 333 S.E.2d at 248. Rather, "it is only when the jury may reasonably infer from the evidence before it that the trial judge's action intimated an opinion as to a factual issue, the defendant's guilt, the weight of the evidence or a witness's credibility that prejudicial error results." *Id.* As this Court has noted, trial judges "must be careful in what they say and do because a jury looks to the court for guidance and picks up *the slightest intimation* of an opinion." *State v. Jenkins*, 115 N.C. App. 520, 524-25, 445 S.E.2d 622, 624-25 (1994) (concluding that the trial judge's action in turning his back to the defendant and jury during the defendant's testimony could reasonably have allowed the jury to infer that the trial court did not believe the defendant to be credible and warranted a new trial) (citation and quotation marks omitted) (emphasis added).

Before deliberations began, the trial court instructed the jurors that they should not infer from "anything [the trial court had] done or said" that any fact had been proven. However, the trial court gave this instruction before the jurors interrupted their deliberations to ask if the trial court would tell the jurors what Sarah's age was at the time of the alleged first-degree statutory rape. Because the trial court did not deliver a similar curative instruction after answering the jurors' questions and before the jurors resumed their deliberations, we cannot assume the jurors would have ignored any intimation of opinion in the trial court's answer. *See State v. Little*, 56 N.C. App. 765, 770, 290 S.E.2d 393, 396 (1982) ("[W]hen the [trial judge's] remarks are brought to the trial judge's attention prior to the jurors' deliberations, and a curative instruction is given, it is assumed that the jurors understood and complied with such an instruction.") (internal citation omitted)).

The State also argues that the trial court's answer was not an expression of opinion or of fact that Sarah was less than 13 years old at the time of the alleged rape, but rather it was a statement of law—that charges brought against a defendant must allege facts that support the charge. However, we conclude the trial court's answer, when viewed in light of the juror's question, could reasonably be interpreted as an expression of an opinion on an issue of fact. The juror asked if it was true that the court could not charge defendant with the crime if the charge was not "in corroboration with the age reference." Black's Law Dictionary (9th ed. 2008), defines corroboration as: "Confirmation or support by additional evidence or authority." We find it reasonable to conclude that the trial court's answer implied that the defendant could not have been charged with statutory rape of a child less than 13 years of age had the

trial court not corroborated that Sarah was younger than the age of 13 at the time of the alleged rape.

The State further argues that the defendant cannot show that he was prejudiced by the trial court's answer because, immediately after receiving the answer, the jury returned to its deliberations and indicated that they were deadlocked only thirty minutes later. The transcript reveals, however, that the jury indicated it was deadlocked on only one of the multiple charges against defendant, without identifying the charge on which it was deadlocked. The State's suggestion that the jury was deadlocked on the charge of statutory rape is a matter of speculation. Furthermore, even if it was the charge of statutory rape on which the jury was deadlocked, the jury ultimately reached a unanimous verdict concerning the charge, and the trial court's answer could reasonably have contributed to that guilty verdict. Therefore, we conclude that the jury could reasonably have inferred that the trial court's answer to the juror's question intimated an opinion about a factual issue that was to be resolved by the jury, and this was a prejudicial error. Accordingly, we reverse defendant's conviction for the first-degree statutory rape of Sarah when she was less than 13 years old.

## B. Trial Court's Use of "Victim"

[3] Defendant also argues that the trial court impermissibly expressed an opinion regarding the prosecuting witnesses by repeatedly referring to them as victims. We disagree.

In its jury instructions, the trial court made several references to "the victim, [Sarah]," "[Sarah], the victim," and "the victim [Jane]." Defendant argues that this amounted to an expression of opinion by the trial court that Sarah and Jane were in fact victims of the crimes with which defendant was charged.

As defendant failed to object to these alleged errors, our review is limited to a review for plain error. *State v. McCarroll*, 336 N.C. 559, 566, 445 S.E.2d 18, 22 (1994) (applying plain error analysis to the defendant's allegation that the trial court erred by referring to the prosecuting witness as the "victim" in the jury instruction); *State v. Surratt*, __ N.C. App. __, __, 721 S.E.2d 255, 256 (citing *McCarroll* and applying plain error review to the same alleged error), *disc. review denied*, __ N.C. __, 722 S.E.2d 600 (2012). To establish plain error, defendant must show that the trial court's error was so fundamental that, in light of the entire record, the error " 'had a probable impact' " on the jury's determination that defendant was guilty and " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[.]' " *State v. Lawrence*, 365

N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)). "In deciding whether a defect in the jury instruction constitutes 'plain error,' [we] must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *State v. Goforth*, 170 N.C. App. 584, 587, 614 S.E.2d 313, 315 (2005).

We conclude that given the context of the references about which defendant complains, it is clear that the trial court was not expressing an opinion. In each instance that defendant cites, the trial court prefaced the sentence with an instruction to the effect, "the State must prove beyond a reasonable doubt," as in the following:

> The defendant has been charged with first-degree rape of [Sarah]. *For you to find the defendant guilty of this offense the State must prove three things beyond a reasonable doubt.* First, that the defendant engaged in vaginal intercourse with [Sarah], the victim. . . . Second, that at the time of the acts alleged the victim, [Sarah], was a child under the age of thirteen years.
>
> . . .
>
> *If you find from the evidence beyond a reasonable doubt* that on or about the alleged date the defendant engaged in vaginal intercourse with the victim, [Sarah] . . . .
>
> . . .
>
> *For you to find the defendant guilty of this offense the State must prove three things beyond a reasonable doubt.* First, that the defendant engaged in vaginal intercourse with the victim, [Sarah].

It is clear from the context of these instructions that the trial court was not expressing an opinion that Sarah and Jane were in fact victims but rather was explaining to the jury what the State must prove beyond a reasonable doubt. *See State v. Young*, 324 N.C. 489, 498, 380 S.E.2d 94, 99 (1989) (concluding that "in the context of the instructions given" the trial court's comment that the defendant had "confessed" to the crime was not an expression of opinion where the comments were immediately followed by the instruction, " 'Now, *if you find* that the defendant made that confession . . . .' "). This case is distinguishable from the case cited by defendant, *State v. Castaneda*, 196 N.C. App. 109, 112, 674 S.E.2d 707, 710 (2009), in which we concluded that the trial court erred by stating: "I instruct you that the witness, Mr. Torres, *was an accomplice*[.]"

We find no error in the trial court's instructions, so defendant's argument is overruled.

### III. Coercion of a Verdict

**[4]** Defendant next argues that the trial court erred by coercing a unanimous verdict from the jury through its responses to the jury's questions about whether they had to continue deliberations despite appearing to be deadlocked. We disagree.

During the jury deliberations, the jury reported three times that it was unable to reach a unanimous verdict as to one of the charges. First, the jury foreman stated: "We have reached a decision on all but one. There is an indivisible [sic]. Do we have to keep smacking our heads on the table until we come to a solid conclusion yay [sic] or nay?" The trial court replied, "Yes."

A juror then asked: "If that does not happen, can we render a verdict on the ones in which we have a solid decision and the other one would simply be, for a better word, a hung jury for just that one charge?" The trial court replied by instructing the jurors to go to lunch, continue deliberations, and "see if you cannot come to some kind of unanimous decision."

Again, after a couple of hours, the jury reported that they were deadlocked on one charge. The trial court then gave an instruction that the jurors should do all that they could to reach a unanimous decision but they should do so "without the surrender of conscientious convictions . . . no juror should surrender an honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors or for the mere purpose of returning a verdict." This instruction is substantially similar to the instruction set out in N.C. Gen. Stat. § 15A–1235(b) regarding the jurors' duty to deliberate, which is commonly referred to as an *Allen* instruction. *State v. Ross*, 207 N.C. App. 379, 387, 700 S.E.2d 412, 418 (2010) (citing *Allen v. United States*, 164 U.S. 492, 41 L. Ed. 528 (1896)).

Less than an hour later, the jury gave a third indication that they were deadlocked: "there will be no unanimous decision on the final charge——verdict." The trial court replied by telling the jury: "The court's of the opinion that you've only been deliberating more than an hour, so if you'll go back and spend some more time. We can even come back tomorrow morning if necessary. But if you will, try your best to come to some kind of a decision." The jury then returned a unanimous verdict approximately forty-five minutes later. Defendant contends

the trial court's responses (and refusal to answer the question by the individual juror) resulted in a coerced verdict and requires reversal of his convictions.

"Article I, section 24 of the North Carolina Constitution prohibits a trial court from coercing a jury to return a verdict." *State v. Dexter*, 151 N.C. App. 430, 433, 566 S.E.2d 493, 496, *aff'd*, 356 N.C. 604, 572 S.E.2d 782 (2002).

> In determining whether a trial court's actions are coercive, an appellate court must look to the totality of the circumstances. Thus, the defendant is entitled to a new trial if the circumstances surrounding jury deliberations
>
>> might reasonably be construed by [a] member of the jury unwilling to find the defendant guilty as charged as coercive, *suggesting to him that he should surrender his well-founded convictions conscientiously held or his own free will and judgment in deference to the views of the majority* and concur in what is really a majority verdict rather than a unanimous verdict.

*Id.* (internal citation omitted).

The trial court provided the jury with an *Allen* instruction after the second time it indicated it was deadlocked. Defendant contends, however, that because the trial court did not give an *Allen* instruction when the jury first indicated that it was deadlocked, but instead told the jury that it must continue deliberations, the court violated the mandate of N.C. Gen. Stat. § 15A-1235(c). As the State points out, section 15A-1235(c) does not require the trial court to give an *Allen* instruction every time the jury indicates it is deadlocked. Rather, it provides that such instructions are discretionary:

> If it appears to the judge that the jury has been unable to agree, the judge *may require* the jury to continue its deliberations and *may give or repeat* the instructions provided in subsections (a) and (b). The judge may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

N.C. Gen. Stat. § 15A-1235(c) (emphasis added).

The State contends, and we agree, that the facts presented here are similar to the facts at issue in *Ross*, 207 N.C. App. at 389, 700 S.E.2d at

419. In *Ross*, this Court rejected the defendant's argument that the trial court coerced a verdict when it failed to give an *Allen* instruction following the jury's third indication that it was deadlocked. *Id.* The jury in *Ross* first told the trial court that it was deadlocked after two hours of deliberation. *Id.* at 384, 700 S.E.2d at 416. The jury was told to continue deliberating, but the trial court did not provide an *Allen* instruction. *Id.* After a couple of hours, the jury again indicated that it was deadlocked. *Id.* at 385, 700 S.E.2d at 417. The trial court then gave an *Allen* instruction to the jury and told the jurors to continue deliberating. *Id.* After receiving a third note indicating the jury was hung, the trial court told the jurors: "I got your note. I understand it. It's short, to the point. It's direct, but I don't accept it yet." *Id.* at 386, 700 S.E.2d at 417. Without giving another *Allen* instruction, the trial court again instructed the jury to resume deliberations. *Id.* Approximately thirty minutes later, the trial court asked the jury if it was making any progress and it indicated it was not. *Id.* Ten minutes later, the jury returned a unanimous verdict. *Id.*

Under the totality of the circumstances, this Court held that the trial court did not err by not giving an *Allen* instruction after the third indication that the jury was deadlocked:

> It is difficult to see how another *Allen* instruction approximately 45 minutes after the first would have been necessary or helpful to the jury or that it would have had any impact on the outcome of the case. Also, the trial court made no additional comments to the jury that an *Allen* instruction would be helpful in clarifying.

*Id.* at 389, 700 S.E.2d at 419.

Here, after the jury's second indication that it was deadlocked, the trial court gave the jury an *Allen* instruction and told the jury to resume deliberations. Also, as in *Ross*, there was a forty-five-minute interval until the next indication of an impasse, at which point the trial court did not give an *Allen* instruction before again sending the jury back into deliberations.

This case is distinguishable from *Dexter*, 151 N.C. App. at 434, 566 S.E.2d at 496, in which this Court concluded that the jury may have reasonably construed the circumstances surrounding its deliberations as coercive and required a new trial. While the trial court in *Dexter* did not give an *Allen* instruction after the jury's third indication that it was deadlocked, there were other factors that contributed to the potentially coercive circumstances. *Id.* The trial court did not directly address a juror's request to be temporarily excused from deliberations to attend

his wife's surgery before it instructed the jury to return to deliberations for the third time. *Id.* It was therefore possible that the juror felt pressured to reach a verdict in time to attend the surgery. *Id.* The trial court also communicated directly with two of the jurors outside the presence of the remaining members of the jury, creating the possibility that the two jurors inaccurately conveyed the trial court's comments to the remaining members of the jury, by indicating that a verdict was required before the jurors could leave. *Id.*

Here, the trial court did not communicate with less than all of the jurors. And, despite defendant's contention to the contrary, the trial court did answer the question from one of the jurors as to whether the jury could render verdicts on those charges on which they were unanimous even if there were other charges on which they were deadlocked. In response to this question, the trial court instructed the jury to "deliberate some more and *see if you cannot* come to some kind of unanimous decision." (Emphasis added.) We conclude this response was not coercive and is readily distinguishable from the trial court's failure to respond to the juror's question in *Dexter*.

The facts presented here are also distinguishable from those presented in *State v. Sutton*, 31 N.C. App. 697, 701, 230 S.E.2d 572, 574 (1976), in which we concluded the trial court's instruction was coercive and rushed the jury to reach a verdict where it instructed the jury to "take no more than five minutes to ascertain whether or not the verdict which you reported yesterday was unanimous." Here, rather than rushing the jury, the trial court informed the jurors that they could continue their deliberations the next morning, if necessary.

Considering the totality of the circumstances, we conclude that there is nothing in the record indicating that the trial court coerced a verdict from the jury, so defendant's argument is overruled.

## IV. Motion in Limine

**[5]** Before trial, defendant filed a motion in limine seeking to exclude testimony by Donna that on one occasion defendant held a gun to her head all night and made Donna's daughters watch. The motion was denied. When the testimony was introduced at trial, defendant timely objected and the objection was overruled. On appeal, defendant argues that the trial court erred in denying the motion as the evidence was inadmissible under Rule 404(b) of the North Carolina Rules of Evidence. We disagree.

As the State contends, defendant failed to preserve the issue for review because he failed to object to Donna's testimony regarding other

acts of domestic violence committed by defendant. *See State v. Whitley*, 311 N.C. 656, 661, 319 S.E.2d 584, 588 (1984) ("[T]he defendant waived his right to raise on appeal his objection to the evidence. Where evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost."). Assuming *arguendo* that it was error to admit the testimony under Rule 404(b), the error was not prejudicial in light of Donna's testimony, admitted without objection, that defendant committed similar acts of domestic violence: "[*H*]*e would just terrorize us. And I don't mean just a little. It was scary terrorizing. . . . [He t]hrew me over coffee tables and fractured my wrists, and the guns and getting his truck and trying to ram it through the trailer in the kids' room.*" (Emphasis added.) This testimony was substantially similar to the testimony that defendant sought to exclude by his motion in limine: that defendant terrorized Donna and her daughters. Because defendant failed to object to this similar testimony, he was not prejudiced by the trial court's admission of the testimony that was the subject of his motion in limine. *See State v. Eubanks*, 151 N.C. App. 499, 502, 565 S.E.2d 738, 741 (2002) (concluding that even if the trial court erred in admitting improper character evidence under Rule 404(b) the error was not prejudicial as the defendant "elicited substantively similar testimony" during his cross-examination of a witness). Defendant's argument is overruled.

## Conclusion

We conclude that the trial court did not err in denying defendant's motion to dismiss the charge of first-degree statutory rape of a child less than 13 years of age, Sarah. The trial court did not coerce a verdict from the jury, and did not express an opinion that Sarah and Jane were in fact victims during the jury instructions. We conclude, however, that the trial court improperly expressed an opinion that Sarah was less than 13 years old at the time of the alleged statutory rape. Defendant has not shown any prejudice from the trial court's denial of his motion in limine regarding the evidence of defendant's prior acts of domestic violence. Defendant is entitled to a new trial on the charge of first-degree statutory rape of Sarah. We find no error with respect to the remaining convictions.

NO ERROR, in part, NEW TRIAL, in part.

Judges STROUD and ERVIN concur.