An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-544

Filed 21 January 2026

Columbus County, Nos. 21CR050462-230, 21CR050463-230

STATE OF NORTH CAROLINA

　　　　　v.

TIMOTHY RAY CAIN, II, Defendant.


Appeal by Defendant from judgment entered 6 February 2024 by Judge Paul A. Holcombe, III, in Columbus County Superior Court. Heard in the Court of Appeals 20 November 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General John R. Green, Jr., for the State.*
>
> *William D. Spence for Defendant.*


GRIFFIN, Judge.

Defendant Timothy Ray Cain appeals from judgment entered after a jury found him guilty of robbery with a dangerous weapon and first-degree murder under the felony murder rule. Defendant contends the trial court erred in denying his motion to dismiss the charges and in failing to satisfactorily instruct the jury. We hold the trial court did not err.

## I.    Factual and Procedural Background

On 8 February 2021, Jacqueline Landreth made plans to drive her white truck to Spring Lake, North Carolina, to buy drugs. She had about $1,800 in her truck's center console. Landreth had made plans to go to her sister's house afterward, but never arrived.

Later that same day around 9:45 p.m., Defendant called his uncle, Jason Smith, for assistance in pulling out a white truck that was stuck in Defendant's mother's backyard. Smith went to help Defendant and Jamaal Green, but, upon realizing it was futile and would destroy the backyard, refused to pull the white truck out. Instead, Smith told Defendant he would get a tractor to try again the following day. Throughout this exchange, Defendant kept Smith away from the truck.

Around 10:00 p.m., Jennifer Cain, Defendant's mother and Smith's sister, returned to her house after receiving a call from her neighbor alerting her of commotion there. She came home and found Defendant, Green, and Smith at her house as well as the white truck in mud up to its tailgate.

Defendant was supposed to go to Amanda Williamson's house on 8 February 2021, but did not arrive. So, Williamson called Defendant and he told her to come meet him at his mother's house. Once she arrived, Williamson saw Defendant and Green move items from the white truck into Defendant's car.

Later that night after getting ready for bed, Cain heard Defendant and Williamson outside by their vehicles. Cain saw an unknown person in Williamson's

vehicle. Around 11:00 p.m. or midnight, Williamson and Defendant drove off in their respective vehicles, accompanied by Green and the additional unidentified person. The group then went to Williamson's house. Williamson parked her car there and got into Defendant's car to join Defendant and Green for a game of cards in Bladenboro.

After playing cards, Defendant dropped off Green and gave him some money. Before leaving, Green grabbed a Timberland shoebox and a bottle of whisky from the back of the car. Finally, Defendant dropped off Williamson.

Over the next few days, Defendant visited Williamson; during these visits, Williamson noticed Defendant's paranoia. Concurrently, in the days following Landreth's disappearance, her sister, Jessica Ballard, tried to find Landreth many times. After six days of trying to locate Landreth, Ballard reported Landreth was missing to the Bladen County Sheriff's Department.

About three weeks after Ballard reported Landreth missing, Ballard reached out to the Sheriff's Department to alert the department she had located Landreth's truck. Law enforcement agents then told Ballard that a detective had found Landreth's body.

After finding Defendant's cell phone in a ditch bank along Highway 701, detectives arrested Defendant. Phone records later exhibited Landreth's last phone call was made to Defendant.

At Defendant's trial, Dr. Susan Venuti, expert in forensic pathology, testified Landreth died from a gunshot in the back of her head. Dr. Venuti also identified non-fatal knife wounds to Landreth's neck.

Defendant testified that on 8 February 2021 at about 1:00 a.m., Defendant met Landreth, took her to Spring Lake where she bought drugs, and then the pair had sex. Although Defendant allegedly couldn't fall asleep because of the drugs he had taken, Defendant testified Landreth slept until mid-morning. Shortly after Landreth awoke, Defendant testified he drove her back to her brother's house so she could get her truck. However, Defendant previously told Ballard he did not know Landreth's location and told two detectives he never met up with Landreth.

Defendant initially stated Lukim Pittman shot Landreth, but later asserted Green shot her. Furthermore, Defendant claimed he took money from Landreth's truck, but testified Green took the cash. Additionally, Defendant declared Green pointed a gun at Defendant and threatened to harm Defendant's children and Cain if Defendant refused to assist Green in disposing Landreth's body.

At the close of evidence, Defendant renewed his motion for a directed verdict, but the trial court denied this motion.

At the charge conference, Defendant requested special jury instructions to emphasize that, if the jury found Defendant was forced to help Green in the robbery, Defendant would not be guilty of robbery *or felony murder*. The trial court instructed the jury that Defendant would not be guilty of robbery if Defendant had a reasonable

fear of immediate death or serious bodily harm if he did not partake and Defendant did not have a reasonable opportunity to avoid acting without risk of death or serious injury. However, rejecting Defendant's special jury instruction request, the trial court did not explicitly instruct that if Defendant was under duress then he would not be guilty of felony murder. Instead, the trial court found the pattern jury instructions sufficient.

The jury found Defendant guilty of robbery with a dangerous weapon and first-degree murder under the felony murder rule. Defendant timely appeals.

## II. Analysis

### A. Motion to Dismiss Denial

Defendant argues the trial court erred in denying his motion to dismiss because the occurrence that took place was not a continuous transaction, and, alternatively, because he was under duress.

This Court reviews a trial court's denial of a motion to dismiss de novo. *State v. Summey*, 228 N.C. App. 730, 733, 746 S.E.2d 403, 406 (2013) (citation omitted). In analyzing a motion to dismiss denial, we must determine whether substantial evidence exists demonstrating (1) each essential element of the charged offense, or a lesser included offense, and (2) a defendant's being the perpetrator of the applicable offense. *Id.* Substantial evidence is relevant evidence that a reasonable mind may accept as adequate to support a conclusion. *State v. Faucette*, 285 N.C. App. 501, 504, 877 S.E.2d 782, 785 (2022) (citation omitted). Furthermore, "the trial court must

view the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from the evidence, and resolving any contradictions in favor of the State." *State v. Anderson*, 181 N.C. App. 655, 659, 640 S.E.2d 797, 801 (2007) (citation omitted).

A defendant's conflicting statements tend to show a guilty conscience. *State v. Redfern*, 246 N.C. 293, 297–98, 98 S.E.2d 322, 326 (1957). In addition to words, a defendant may demonstrate guilt by conduct, including subsequent acts of destroying traces of the crime. *State v. Harden*, 177 N.C. 580, 580, 98 S.E.2d 782, 782 (1919); *State v. Branche*, 291 N.C. App. 214, 223–24, 895 S.E.2d 597, 605 (2023) (citation omitted).

The elements of robbery with a dangerous weapon are (1) an unlawful taking or attempted taking of personal property from a person or in another's presence, (2) by use or threatened use of a firearm or another dangerous weapon, (3) whereby a person's life is endangered or threatened. *State v. Villarreal*, 296 N.C. App. 136, 141, 907 S.E.2d 80, 85 (2024) (citation omitted); *State v. Haselden*, 357 N.C. 1, 17, 577 S.E.2d 594, 605 (2003) (citation omitted). Such use or threatened use of a "dangerous weapon must precede or be concomitant with the taking, or be so joined by time and circumstances with the taking as to be part of one continuous transaction." *State v. Olson*, 330 N.C. 557, 566, 411 S.E.2d 592, 597 (1992) (citation omitted). When such a continuous transaction takes place, "the temporal order of the threat or use of a dangerous weapon and the taking is immaterial." *Id.* (citation omitted).

Felony murder occurs when (1) a defendant, or someone who was working in concert with a defendant, committed or attempted to commit a predicate felony, (2) in the perpetration or attempted perpetration of such felony, a killing occurred, and (3) the defendant or co-felon caused such a killing. *State v. Maldonado*, 241 N.C. App. 370, 376, 772 S.E.2d 479, 483–84 (2015) (citation omitted).

"If there is evidence tending to show that [the] defendant took property belonging to [the victim] immediately after killing him, such evidence would support a jury determination that the killing occurred during the perpetration of a robbery." *State v. Wooten*, 295 N.C. 378, 386, 245 S.E.2d 699, 704 (1978) (citation omitted). However, if there is a lack of evidence demonstrating a defendant's intent to rob the victim and tending to show a continuous chain of events, then a defendant could not be convicted of first-degree murder under the felony-murder doctrine. *Id.*

Duress is an affirmative defense to robbery. *State v. Sanders*, 201 N.C. App. 631, 635, 687 S.E.2d 531, 535 (2010) (citation omitted). Duress occurs when (1) a defendant's illegal actions were caused by his or her reasonable fear that the defendant or another would suffer (2) serious bodily harm or immediate death (3) if the defendant refrained from the illegal actions, and (4) the defendant did not have a reasonable opportunity to avoid partaking in the illegal actions without exposure to serious bodily injury or death. *State v. Miller*, 258 N.C. App. 325, 333, 812 S.E.2d 692, 698 (2018) (citation omitted). A defendant has the burden of proving an affirmative defense of duress to the jury's satisfaction. *Redding v. Shelton's Harley*

*Davidson, Inc.*, 139 N.C. App. 816, 822, 534 S.E.2d 656, 659 (2000) (citation omitted); *State v. Mercer*, 373 N.C. 459, 463, 838 S.E.2d 359, 363 (2020) (citation omitted). "The jury is the sole judge of the credibility of each witness and must decide whether to believe the testimony of any particular witness." *State v. Crutchfield*, 160 N.C. App. 528, 535, 586 S.E.2d 525, 530 (2003) (citation omitted).

Here, even assuming arguendo that a rational jury could determine the occurrence was not continuous, we must view the evidence in the light most favorable to the State.

Defendant made numerous conflicting statements. When talking to detectives, Defendant initially denied having met up with Landreth at all. Furthermore, Defendant told Ballard he didn't know where Landreth was. Despite these prior statements, Defendant testified he indeed met up with Landreth, had sex with her, and spent hours with her. Such conflicting statements tend to show Defendant's guilt. *Redfern*, 246 N.C. at 297–98, 98 S.E.2d at 326.

Still, there are more conflicting statements. At one point, Defendant indicated Pittman killed Landreth, but later claimed Green shot a gun at her. Defendant initially said he took cash from Landreth's vehicle, but later disclosed Green took the money. These accounts further buttress a showing of Defendant's guilty conscience.

Additionally, Defendant's conduct tended to be indicative of his guilt. Defendant failed to go to the police for about three weeks. Moreover, he abandoned his cell phone in a ditch alongside a highway. Defendant also admitted that he

assisted Green in trying to dispose and hide Landreth's body. Afterward, Defendant texted Landreth's phone to say she stood him up. In giving the State the benefit of every reasonable inference, this act could show Defendant tried to conceal that he had been with Landreth.

In resolving contradictions in favor of the State, the chain of events tends to appear to be continuous. After Landreth's shooting, Defendant and Green then took her truck and additional personal property within the truck including money and weapons. Defendant and Green disposed of Landreth's body and then returned to Cain's house with Landreth's property. This evidence tends to show Defendant took Landreth's property immediately after her killing. Thus, in the light most favorable to the State, Landreth's killing is sufficiently joined by time and circumstance with the taking of her personal possessions as to constitute one continuous transaction. Therefore, there is substantial evidence demonstrating the elements of robbery with a dangerous weapon and felony murder as well as demonstrating Defendant's being the perpetrator. As such, the trial court did not err in its denial of the motion to dismiss.

Alternatively, Defendant contends the trial court erred in denying his motion to dismiss because he was under duress. However, Defendant had the burden of proving he was under duress to the *jury*. Therefore, whether Defendant was under duress was a question for the jury, not the trial court. Thus, the trial court did not err in denying the motion to dismiss.

## B. Request for Special Jury Instructions

Defendant argues the trial court erred in failing to use his special jury instructions emphasizing duress in context of felony murder.

This Court reviews a properly preserved jury instruction challenge de novo. *State v. Richardson*, 270 N.C. App. 149, 152, 838 S.E.2d 470, 473 (2020) (citation omitted). On appeal, a defendant must show both that a challenged jury instruction was erroneous and that such error prejudiced the defendant. *Id.* To demonstrate prejudice, a defendant must show there is a reasonable possibility that a different verdict would have been reached but for the error in question. N.C. Gen. Stat. § 15A-1443(a) (2023). Additionally, a trial court does not err when using pattern jury instructions that embody a defendant's requested instructions in substance. *State v. Ball*, 324 N.C. 233, 238, 377 S.E.2d 70, 73 (1989) (citation omitted).

Here, Defendant fails to demonstrate a reasonable possibility of a different outcome but for the alleged erroneous jury instruction. The jury found Defendant guilty of robbery with a dangerous weapon even with this offense's explicit inclusion that Defendant would not be guilty of robbery if defendant had a reasonable fear of immediate death or serious bodily harm if he did not partake and Defendant did not have a reasonable opportunity to avoid acting without risk of death or serious injury. Additionally, the trial court instructed the jury on the affirmative defense of duress so the jury had pertinent information as to the substance of what Defendant alleges

it was missing. Thus, Defendant's showing of prejudice falls short. Therefore, Defendant is not entitled to a new trial.

### III.   Conclusion

The trial court neither erred in denying the motion to dismiss nor in failing to use Defendant's special requested jury instructions.

NO ERROR.

Judges MURRY and FREEMAN concur.

Report per Rule 30(e).