In the Matter of: T.C.S., Juvenile

No. COA01-176

(Filed 15 January 2002)

## 1. Sexual Offenses— indecent liberties between children— motion to dismiss—sufficiency of evidence—perpetrator of crime

The juvenile court did not err by failing to dismiss the charge of taking indecent liberties between children under N.C.G.S. § 14-202.2 based on the sufficiency of the evidence regarding defendant juvenile as the perpetrator of the crime, because: (1) one witness testified that she saw the child victim, the victim's sister, and another boy who was around twelve years old walking together, and that the victim took off her clothes at the boy's urging and lay down while the boy climbed on top of her; (2) another witness testified that at a time consistent with the time the other witness saw the three children, she saw the victim walk out of the woods holding hands with defendant juvenile with the victim's sister trailing behind; and (3) the victim identified the perpetrator from a photographic lineup.

## 2. Sexual Offenses— indecent liberties between children— motion to dismiss—sufficiency of evidence—purpose of arousing or gratifying sexual desire

The juvenile court did not err by failing to dismiss the charge of taking indecent liberties between children under N.C.G.S. § 14-202.2 based on the sufficiency of the evidence showing that defendant juvenile acted for the purpose of arousing or gratifying sexual desire, because: (1) the juvenile was almost twelve years of age when he was seen holding hands with the five-year-old victim in the presence of her three-year-old sister; (2) a

**IN RE T.C.S.**

[148 N.C. App. 297 (2002)]

witness testified that the victim's actions appeared to be done at the insistence and direction of the boy, and the boy appeared to put his hands on his private parts while the victim was taking off her clothes; and (3) the age disparity, the control by the juvenile, the location and secretive nature of their actions, and the attitude of the juvenile is evidence of the maturity and intent of the juvenile.

**3. Evidence— hearsay—medical diagnosis exception**

Although the juvenile court erred in an indecent liberties between minors case by admitting the statements of the child victim to a social worker through the testimony of a doctor without a showing that the victim knew her statements were for treatment purposes or were otherwise reliable, there was no prejudicial error in light of the other evidence of identity.

**4. Trials— juvenile delinquency hearing—recess and continuation for three months**

The juvenile court did not commit plain error in an indecent liberties between minors case by recessing and continuing the hearing for three months, because defendant juvenile has failed to show prejudice as a result of the delay.

Appeal by respondent-juvenile from adjudication order entered 23 February 2000 by Judge Michael R. Morgan in Wake County District Court and disposition order entered 14 August 2000 by Judge Craig Croom in Wake County District Court. Heard in the Court of Appeals 5 December 2001.

*Attorney General Roy Cooper, by Assistant Attorney General Elizabeth N. Strickland, for the State.*

*Law Offices of James R. Ansley, by James R. Ansley and Robert J. Clements, for respondent-appellant.*

WALKER, Judge.

On 26 July 1999, T.C.S., a juvenile, only one month from being twelve years old, was charged with second degree rape and taking indecent liberties between children involving A.H. who was five years old. The adjudication hearing began on 18 November 1999, and when it was not concluded that day, the juvenile court tentatively scheduled the hearing to continue on 22 December 1999. However, the hearing did not resume until 23 February 2000.

**IN RE T.C.S.**

[148 N.C. App. 297 (2002)]

The State's evidence tended to show the following. On 26 July 1999, Martha Sullivan saw three children, two girls and a boy, walking by her house between 1:00 p.m. and 3:00 p.m. She identified A.H. and her younger sister as the two girls but did not know the identity of the boy. Ms. Sullivan testified that the boy was tall and slender, was wearing jeans and a hat, and appeared to be white. Ms. Sullivan testified that, as she observed these children, A.H. pulled down her shorts and underpants and laid down on the ground at what appeared to be the request of the boy. The boy's back was toward Ms. Sullivan, but she testified that "he had his hands down like, you know, on his privates. And then he got down on the ground on his knee and gotten on—getting on top of her . . . . Just like he had put [his hands] down on the front, you know, of his privates and whenever he got—and then he got on top of her." Ms. Sullivan then ran to the back door and "hollered at them." A.H. got up and put her clothes on. Then the three children walked away in the direction of the next trailer.

John Sullivan, Ms. Sullivan's husband, was also home that day and testified that, after being called to the back door by his wife, he saw A.H. on the ground and it appeared she did not have on any shorts or underpants. He then observed a boy who at first walked away but then turned around and came back for his bike. Mr. Sullivan testified that he could not identify the boy.

Candi Bowen testified that on the day in question, at around 1:00 p.m., after talking with her younger brother, she went looking for the juvenile to speak with him. After searching, Ms. Bowen found the juvenile and A.H. holding hands and coming from the direction of the woods and a trampoline on which the children played. A.H.'s sister was following behind them. When Ms. Bowen asked where they had been, the juvenile "smarted off at me like 'none of your business.'" A.H. told Ms. Bowen that they had been on the trampoline. Ms. Bowen testified that "[A.H.] looked roughed up. She had branches in her hair. She didn't have no shoes on or no socks on. Her pants were on backwards. Her tags were sticking out the front of her shorts and was smiling, but you know, she looked kind of—her eyes were like big, like kind of real big kind of acting."

A.H. was called to testify, but after being non-responsive to examination by the judge and the prosecutor, the juvenile court determined A.H. was not in a position to testify and declared her unavailable for questioning.

IN RE T.C.S.

[148 N.C. App. 297 (2002)]

A.H.'s mother testified that when she got home from work on the evening of 26 July 1999, her daughter was "shook up" and "looked rough." She testified that A.H. told her that "her private parts was hurting her." After talking on the telephone with the clinic, she took her daughter to Wake Medical Center the next day. The testimony of A.H.'s mother showed that she related to the clinic physician that A.H. had been playing in the woods when she and a boy went off together. A.H. pulled down her pants and laid down on the ground. The boy got on top of her and "stuck his wee wee in."

Vivian Denise Everett, M.D., the Director of the Child Sexual Abuse Team (the Team) at Wake Medical Center, testified that she examined A.H. on 10 August 1999, pursuant to a referral to the Team. Although she personally had not interviewed A.H., Dr. Everett stated that a social worker on the Team had interviewed her and reported her findings to Dr. Everett. Over objection, Dr. Everett testified as to statements made by A.H. to the social worker who then related them to Dr. Everett in preparation for the medical examination. According to Dr. Everett, A.H. told the social worker, in response to leading questions and using anatomically correct dolls, that the juvenile took his pants off and got on top of A.H. with her pants and underwear off. The social worker asked whether the juvenile put "his wee wee" in A.H. and A.H. nodded her head. The social worker asked "if his wee wee went on the outside or if it went on the inside" of A.H.'s private parts and A.H. responded that it was on the inside.

Dr. Everett also testified that her physical examination of A.H. revealed the following in part:

> that there was asymmetry, so that the hymen is shaped like a crescent and you would expect on either side of 12 o'clock to basically look the same, since the hymen would be a crescent. Instead, it was asymmetric, so the area at 11 o'clock was much higher than that at 1 o'clock . . . . My assessment was that the physical exam was consistent with the history that she gave, which was that of penile vaginal penetration.

When the hearing resumed on 23 February 2000, Terry Gallagher of the Cary Police Department testified that she twice interviewed A.H. Officer Gallagher was called to the scene at the time of the initial report on 26 July 1998 and returned one week later with a photographic lineup created by Seth Lambert, a juvenile investigator for the Cary Police Department. A.H. pointed out one of the photographs presented to her to be that of the perpetrator.

**IN RE T.C.S.**

[148 N.C. App. 297 (2002)]

Officer Lambert testified that he responded to the original call from Ms. Harris. He had developed a photographic lineup from a yearbook which included a photograph of the juvenile. He testified that neither Mr. nor Ms. Sullivan could identify the perpetrator. He also interviewed the juvenile's father, who indicated that, on 26 July 1999, the juvenile had been with him all day and had been watching television in the living room.

At the close of the evidence, the juvenile successfully argued for the dismissal of the charge of second degree rape by reason of the failure of the evidence to support all of the elements of the charge. However, the juvenile court denied the motion to dismiss the charge of indecent liberties between children. The juvenile did not present any evidence.

On appeal, the juvenile argues that the juvenile court erred in failing to dismiss the charge of indecent liberties between children for insufficient evidence. To survive a motion to dismiss, the State must present " 'substantial evidence of each element of the charged offenses sufficient to convince a rational trier of fact beyond a reasonable doubt of defendant's guilt.' " *In re Lucas*, 94 N.C. App. 442, 452-53, 380 S.E.2d 563, 569 (1989) (*quoting State v. Griffin*, 319 N.C. 429, 433, 355 S.E.2d 474, 476 (1987)). This may be from either direct or circumstantial evidence and taken in a light most favorable to the State. *Id.*

The juvenile was charged under the "Indecent liberties between children" statute, N.C. Gen. Stat. § 14-202.2 (1999), which states as follows:

(a) A person who is under the age of 16 years is guilty of taking indecent liberties with children if the person either:

(1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex who is at least three years younger than the defendant for the purpose of arousing or gratifying sexual desire.

Thus, the State must prove that (1) this juvenile (2) who is under the age of sixteen years (3) took or attempted to take (4) indecent liberties (5) with A.H. (6) who is at least three years younger than the juvenile (7) for the purpose of arousing or gratifying sexual desire.

[1] The juvenile first claims there was insufficient evidence of his being the perpetrator of the crime. Ms. Sullivan testified that between

the hours of 1:00 p.m. and 3:00 p.m. on 26 July 1999, she saw A.H., A.H.'s sister, and another boy, who was roughly twelve years old, walking together. Ms. Sullivan saw A.H., at the urging of the boy, take off her clothes and lie down while the boy climbed on top of her.

Ms. Bowen testified that, at a time consistent with the time when Ms. Sullivan saw the three children, she saw A.H. walk out of the woods holding hands with the juvenile with A.H.'s sister trailing behind. A.H. looked "roughed up" with twigs and branches in her hair, barefoot, clothes on backwards, and tags hanging out.

Officer Gallagher testified that A.H. identified the perpetrator from a photographic lineup created by Officer Lambert which included the juvenile. After the identification, the officers continued their investigation of the juvenile. Although the evidence is conflicting, when viewed in its totality and in the light most favorable to the State, it is sufficient to show that the juvenile was the perpetrator.

[2] The juvenile also contends there was insufficient evidence to show that he acted "for the purpose of arousing or gratifying sexual desire" as required by N.C. Gen. Stat. § 14-202.2. In arguing for a dismissal, the juvenile's counsel argued that even if the juvenile were the perpetrator, the State failed to present any evidence that he committed this act for the purpose of arousing or gratifying sexual desire.

This Court has recently interpreted this provision of N.C. Gen. Stat. § 14-202.2 in the case of *In re T.S.*, 133 N.C. App. 272, 515 S.E.2d 230, *disc. rev. denied*, 351 N.C. 105, 540 S.E.2d 751 (1999). In that case, we held that, unlike the adult statute, "the purpose to arouse or gratify sexual desires should not be inferred from the act alone between children." *In re T.S.*, 133 N.C. App. at 276, 515 S.E.2d at 233. "[A] lewd act by adult standards may be innocent between children, and unless there is a showing of the child's sexual intent in committing such an act, it is not a crime under G.S. 14-202.2." *Id.* Thus, this Court has held that the State must show "some evidence of the child's maturity, intent, experience, or other factor indicating his purpose in acting" before imputing sexual ambitions to the child. *Id.* at 277, 515 S.E.2d at 233.

Here, the juvenile was almost twelve years of age when he was seen holding hands with the five-year-old victim in the presence of her three-year-old sister. The children were coming from a wooded area and A.H. looked "roughed up." Ms. Sullivan testified that A.H.'s

**IN RE T.C.S.**

[148 N.C. App. 297 (2002)]

actions appeared to be done at the insistence and direction of the boy she saw. Although his back was to her, Ms. Sullivan testified that he appeared to put his hands on his private parts while A.H. was taking off her clothes.

Also, as a result of a discussion with her younger brother, Ms. Bowen searched for the juvenile on the afternoon of 26 July 1999. When found and confronted by Ms. Bowen as he was walking out of the woods with A.H., the juvenile "smarted off" and told Ms. Bowen that what the children had been doing was "none of your business." A.H.'s mother testified that A.H. stated that she and a boy went off by themselves while they were out playing and the boy "stuck his wee wee in" her.

The age disparity, the control by the juvenile, the location and secretive nature of their actions, and the attitude of the juvenile is evidence of the maturity and intent of the juvenile. Taking all of the circumstances in the light most favorable to the State, there is sufficient evidence of maturity and intent to show the required element of "for the purpose of arousing or gratifying sexual desire." Thus, the juvenile court properly denied the motion to dismiss the charge of indecent liberties between children.

[3] The juvenile next contends that the juvenile court erred in admitting the statements of A.H. to the social worker through the testimony of Dr. Everett. Our Courts have held that statements of a victim to a social worker, even if ultimately used for the purpose of medical diagnosis, are inadmissible hearsay if the record fails to show that the victim "had a treatment motive" or that there was some other indicia of reliability and truthfulness in the manner of obtaining the statement. *See State v. Waddell*, 351 N.C. 413, 527 S.E.2d 644 (2000); *State v. Hinnant*, 351 N.C. 277, 523 S.E.2d 663 (2000); *State v. Bates*, 140 N.C. App. 743, 538 S.E.2d 597 (2000), *disc. rev. denied*, 353 N.C. 383, 547 S.E.2d 20 (2001).

Here, the State failed to show that A.H. knew her statements were for treatment purposes or were otherwise reliable. Thus, the admittance of the testimony of Dr. Everett that A.H. told the social worker that the juvenile was the perpetrator was in error. However, in light of the other evidence of identity, there was no prejudicial error in admitting such evidence.

[4] The juvenile finally contends that there was plain error in the recess and continuing of the hearing for three months. The juvenile

has failed to show prejudice as a result of the delay. We find there was no plain error. This assignment of error is overruled.

In conclusion, we find there was sufficient evidence for the juvenile court to adjudicate T.C.S. as delinquent based on his committing indecent liberties between children. The hearing was free of prejudicial error.

Affirmed.

Judges WYNN and THOMAS concur.