STEPHENS, Judge.
 

 *131
 
 This appeal arises from Juvenile's adjudication as delinquent based upon petitions alleging he committed two counts each of simple assault and sexual battery against two female schoolmates by draping his arms around the girls' shoulders in order to smear a glowing liquid on them during an evening of Halloween trick-or-treating. Because the State failed to introduce sufficient evidence that Juvenile touched the tops of the girls' breasts for a sexual purpose, we vacate the adjudication of sexual battery and remand the case for entry of a new disposition order.
 

 *132
 

 Factual and Procedural Background
 

 On 20 April and 26 May 2015, the State filed petitions against Juvenile S.A.A. ("Scott"), alleging that he had committed two counts each of sexual battery and simple assault. On 21 July 2015, Scott appeared in Orange County Juvenile Court for an adjudication hearing before the Honorable Beverly Scarlett, Judge presiding. Evidence at the adjudication hearing tended to show the following: The petitions arose from events that took place on Friday, 31 October 2014, in Chapel Hill. On that Halloween evening, Scott, then a 13-year-old student at Culbreth Middle School, and three of his male friends went to the Southern Village neighborhood where many other Culbreth students
 
 *604
 
 were walking around, trick-or-treating, trying to scare each other, and acting "crazy." Scott was wearing a "crazy" costume, including a black body suit, "LED light teeth," and "glow gloves." After one of his gloves "busted," Scott began wiping glowing green liquid from the glove
 
 [3]
 
 on trees, signs, and "tons" of people.
 

 Sixth-grade Culbreth students "Lauren" and "Melissa," both then age eleven, were trick-or-treating in Southern Village when they saw Scott walking with some other boys. Melissa testified that Scott asked the girls if they wanted drugs. As Lauren and Melissa walked away, Scott followed, coming up between the girls and draping an arm over each girl's shoulder. Lauren testified that Scott "rubbed this green glow stick stuff on" her, leaving glowing liquid on her shirt near her collar bone. Melissa testified that Scott reached his arm around her shoulder and "put this weird green glowing stuff" on her arm and back, also touching her "boobs" over her sweatshirt.
 

 After the incident, Lauren and Melissa ran to the nearby home of Joe Rice, a friend of their parents. Lauren was upset that the glowing liquid was on her clothes, and Rice used wet paper towels to wipe off the material. Rice believed that "the glow stick was the primary way that [the girls] had been harassed." Lauren and Melissa then "trick or treated some more," returning to Lauren's house between 8:30 and 9:00 p.m.
 

 When Melissa's father picked her up at about 10:00 p.m., she reported that a boy with glow paint on his hands had tried to grab her "chest or boobs." That night, Lauren told her mother that something had happened, but did not provide many details until the next morning, when she reported that a boy had "grabbed her from behind with glow stick material ... on his hand and touched her." Neither Lauren's nor Melissa's parents contacted the police over the weekend.
 

 *133
 
 However, when Lauren and Melissa returned to school the following Monday, they reported the incident to school resource officer Stan Newsome of the Chapel Hill Police Department. Newsome called Lauren's mother, explained that he would prepare an incident report, and discussed possible charges against Scott. About a month later when Newsome told Scott he was investigating an incident on Halloween, Scott responded, "Oh, the thing with the glow in the dark stuff." Newsome testified that Scott admitted wiping the glowing liquid on Melissa's and Lauren's shoulders, but denied touching their breasts.
 

 At the adjudication hearing, Scott admitted putting the glow glove liquid on trees, signs, and some people. When asked why he did so, Scott replied, "Because it was Halloween." Scott testified that he did not remember seeing Lauren and Melissa on Halloween night. However, Scott's friend "Brandon," who had been trick-or-treating with Scott, testified that Scott touched a girl's shoulder with his leaking glow glove, and the girl asked Scott to get away from her. According to Brandon, in response, Scott apologized and walked away.
 

 At the conclusion of the hearing, Judge Scarlett adjudicated Scott delinquent on all charges. In August 2015, Judge Scarlett transferred the case to Alamance County where Scott and his family had moved. On 10 September 2015, Scott appeared in Alamance County District Court for a dispositional hearing before the Honorable Kathryn W. Overby, Judge presiding. Judge Overby imposed a Level 1 sentence and ordered Scott to be placed on probation for 12 months. The disposition order was based upon the most serious offense before the district court, to wit, sexual battery. Scott gave notice of appeal at the hearing.
 

 Discussion
 

 On appeal, Scott argues that the district court erred by (1) denying his motion to dismiss the sexual battery petitions, (2) adjudicating him delinquent on a theory of sexual battery not stated in the petitions, (3) failing to make findings of fact in support of its dispositional order, and (4) imposing probation and drug and alcohol screenings. We
 
 *605
 
 vacate the court's adjudication of sexual battery as based on insufficient evidence, affirm the district court's adjudication of simple assault, and remand the case for entry of a new disposition order.
 

 I. Motion to dismiss sexual battery petitions
 

 Scott first contends that the district court should have allowed his motion to dismiss the sexual battery petitions because the State failed
 
 *134
 
 to prove that Scott touched the breasts of Lauren and Melissa for the purpose of sexual arousal or sexual gratification. We agree.
 

 As an initial matter, we address the State's contention that Scott failed to preserve this issue for appellate review. As Scott concedes, at the adjudication hearing, his attorney moved to dismiss the sexual battery petitions at the close of the State's evidence, but failed to renew the motion after Scott presented his case. To preserve an argument of error in a trial court's denial of his motion to dismiss, a juvenile must move to dismiss the petitions against him at the close of the State's evidence and again at the close of all the evidence.
 
 In re Hodge
 
 ,
 
 153 N.C.App. 102
 
 , 107,
 
 568 S.E.2d 878
 
 , 881 (2002) ("[I]f a [juvenile] fails to move to dismiss the action ... at the close of all the evidence, he may not challenge on appeal the sufficiency of the evidence to prove the crime charged." (citation and internal quotation marks omitted)).
 

 We may suspend th[e] prohibition under [Appellate] Rule 2, however, to prevent manifest injustice to a party. When this Court firmly concludes, as it has here, that the evidence is insufficient to sustain a criminal conviction ... it will not hesitate to reverse the conviction,
 
 sua sponte
 
 , in order to prevent manifest injustice to a party.
 

 In re K.C.
 
 ,
 
 226 N.C.App. 452
 
 , 455,
 
 742 S.E.2d 239
 
 , 242 (citations and internal quotation marks omitted),
 
 disc. review denied
 
 ,
 
 367 N.C. 218
 
 ,
 
 747 S.E.2d 530
 
 (2013). We exercise our discretion under Rule 2 to review the merits of Scott's appeal in order to prevent manifest injustice because we conclude that the evidence against Scott is insufficient to support an adjudication of delinquency as to sexual battery.
 

 We review a court's denial of a juvenile's motion to dismiss
 
 de novo
 
 . Where the juvenile moves to dismiss, the court must determine whether there is substantial evidence (1) of each essential element of the offense charged, and (2) of the juvenile's being the perpetrator of such offense. The evidence must be such that, when it is viewed in the light most favorable to the State, it is sufficient to raise more than a suspicion or possibility of the respondent's guilt.
 

 Id.
 

 (citations, internal quotation marks, ellipses, and brackets omitted). However, if the evidence raises only a suspicion that the juvenile committed the offense, the motion to dismiss should be granted.
 
 In re R.N.
 
 ,
 
 206 N.C.App. 537
 
 , 540,
 
 696 S.E.2d 898
 
 , 901 (2010). "This is true even though the suspicion so aroused by the evidence is strong."
 
 In re Vinson
 
 ,
 
 298 N.C. 640
 
 , 657,
 
 260 S.E.2d 591
 
 , 602 (1979) (citation omitted).
 

 *135
 
 The elements of sexual battery are met if a juvenile, (1) for the purpose of sexual arousal, sexual gratification, or sexual abuse, (2) engages in sexual contact with another (3) by force and against the will of the other person.
 
 N.C. Gen. Stat. § 14-27
 
 .5A(a) (2013).
 
 [4]
 
 In criminal cases involving adult defendants, the element of acting for the purpose of sexual arousal, sexual gratification, or sexual abuse may be inferred "from the very act itself[.]"
 
 In re T.S.
 
 ,
 
 133 N.C.App. 272
 
 , 275,
 
 515 S.E.2d 230
 
 , 232 (citations omitted),
 
 disc. review denied
 
 ,
 
 351 N.C. 105
 
 ,
 
 540 S.E.2d 751
 
 (1999). "However, ... intent to arouse or gratify sexual desires may [not] be inferred in children under the same standard used to infer sexual purpose to adults."
 
 Id.
 
 at 276,
 
 515 S.E.2d at 233
 
 . Rather, this Court has held that a sexual
 

 purpose does not exist without some evidence of the child's maturity, intent, experience, or other factor indicating his purpose in acting. Otherwise, sexual ambitions must not be assigned to a child's actions.
 

 *606
 
 The element of purpose may not be inferred solely from the act itself. ... The mere act of touching is not enough to show purpose.
 

 In re K.C.
 
 ,
 
 226 N.C.App. at 457
 
 ,
 
 742 S.E.2d at 242-43
 
 (citations and internal quotation marks omitted).
 

 In
 
 In re T.C.S.
 
 , an almost-twelve-year-old juvenile was seen coming out of the woods holding hands with the five-year-old victim who "looked 'roughed up' with twigs and branches in her hair, barefoot, clothes on backwards, and tags hanging out[,]" and a witness saw the juvenile "appear[ ] to put his hands on his private parts while [the victim] was taking off her clothes."
 
 148 N.C.App. 297
 
 , 302-03,
 
 558 S.E.2d 251
 
 , 254 (2002). In addition, when another witness confronted the juvenile about what he was doing, the juvenile "smarted off" and told the adult witness his actions with the victim were "none of [her] business."
 

 Id.
 

 at 303
 
 ,
 
 558 S.E.2d at 254
 
 . This Court held that
 

 [t]he age disparity, the control by the juvenile, the location and secretive nature of their actions, and the attitude of the juvenile is evidence of the maturity and intent of the juvenile. Taking all of the circumstances in the light most favorable to the State, there is sufficient evidence of maturity and intent to show the required element of "for the purpose of arousing or gratifying sexual desire."
 

 *136
 

 Id.
 

 In contrast, in
 
 In re K.C.
 
 , this Court considered an adjudication of delinquency on the basis of sexual battery where the fifteen-year-old juvenile, "Keith," was alleged to have touched and squeezed the buttocks of a fifteen-year-old classmate, " Karen," during school.
 
 226 N.C.App. at 454
 
 ,
 
 742 S.E.2d at 241
 
 . Karen reported that, on a day when a substitute teacher was present, Keith had seated himself, not in his assigned place, but at a desk near a classroom bookshelf.
 

 Id.
 

 When Karen stood near Keith and bent over to re-shelve a book, "Keith 'touched and grabbed her.' Karen reacted by informing Keith: 'Don't do that.' Keith did not respond."
 

 Id.
 

 (brackets omitted). The evidence about Keith's intent and purpose in touching Karen's buttocks was conflicting:
 

 ... Keith ... admitted to touching Karen on the buttocks, "but he said it was an accident."
 

 Testifying in his own defense, Keith largely corroborated Karen's testimony leading up to the moment of contact. He explained that he had been sitting in his seat and "I had dropped my pencil and when I picked my pencil up, I accidentally hit [Karen's] butt, but I didn't squeeze it." Keith stated that he was seated during the entire event, having come into contact with Karen during the process of leaning down to get his pencil.
 

 ....
 

 When Karen was asked why she believed the contact was intentional, she responded: "You can't touch and grab someone and not be accident [sic] and especially if you're a boy." She also testified that Keith had said certain "nasty stuff" to her at the beginning of the school year. Specifically, Karen described an instance in which Keith purportedly asked her, "When are you going to let me hit?," which Karen took to mean, "When are you going to let me have sex with you?" When Keith was asked if he had ever "talked to Karen about anything in a sexual nature," he avowed that he had not.
 

 Id.
 
 at 454, 457,
 
 742 S.E.2d at 241, 243
 
 (some brackets omitted). In holding this evidence insufficient "to raise more than a suspicion or possibility that Keith committed sexual battery[,]" we noted that
 

 Keith and Karen [were] the same age and there [was] no evidence that Keith exercised any particular control over the situation. The incident occurred in a public school
 
 *137
 
 room during the school day. Keith contends that the touching was accidental and also made a statement to that effect directly after the event. Further, Keith's alleged request to "hit" was made months before the moment of contact between him and Karen, with no evidence of any contact of any sort between the two of them from the beginning of the school year, presumably in late August, through late February.
 

 Id.
 
 at 457-58,
 
 742 S.E.2d at 243
 
 .
 

 Here, we conclude that the evidence supporting an inference that Scott acted with
 
 *607
 
 "the purpose of arousing or gratifying sexual desire" when he touched Melissa's and Lauren's breasts is far weaker than that in
 
 In re T.C.S.
 
 and falls short even of the evidence held insufficient in
 
 In re K.C.
 
 At the time of the incident, Scott was 13 years old and the girls 11 years old, and all three were students at the same middle school. Scott consistently denied touching either girls' breast, instead contending that he had only put his hands around their shoulders. This account was supported by testimony from one of Scott's male friends who witnessed the incident and described Scott touching a girl's shoulder but not her breast. Neither the location nor the alleged manner of the touching was secretive in nature. Rather, Scott and the girls were on a public street with numerous other juveniles who were trick-or-treating, and many other young people were acting "crazy," running around, and generally behaving as children and young teens might be expected to do on Halloween night. The evidence was undisputed that Scott had been wiping the green glowing liquid from his glove on trees, signs, and other young people during the night-annoying, possibly even distressing and obnoxious, behavior-but not an obviously sexual act. Similarly, nothing about Scott's attitude suggested a sexual motivation in rubbing the glowing liquid on the girls. Neither girl testified that Scott made any sexual remarks to them, either on Halloween night or in any previous interactions with him. Further, according to Brandon, when another young girl-apparently neither Lauren nor Melissa-told Scott to stop putting the liquid on her on Halloween night, Scott stopped, apologized, and walked away. Finally, when the girls ran away after Scott touched them, Scott did not pursue or try to stop them, or attempt to exert control over them in any way. This evidence, even taken in the light most favorable to the State, does not support an inference that Scott touched Lauren's and Melissa's breasts for "the purpose of arousing or gratifying sexual desire." Accordingly, we vacate the adjudication of sexual battery, affirm the adjudication of simple assault, and remand for a new dispositional
 
 *138
 
 order, the previous disposition having been based upon sexual battery as the most serious offense before the district court. In light of this result, we do not address Scott's additional arguments.
 

 VACATED IN PART AND REMANDED.
 

 Judges BRYANT and CALABRIA concur.
 

 [3]
 

 Some witnesses referred to the liquid as coming from Scott's glove, while others referred to it as coming from a "glow stick."
 

 [4]
 

 Section 14-27.5A was recodified as
 
 N.C. Gen. Stat. § 14-27.33
 
 by Session Laws 2015-181, s. 15, effective 1 December 2015, and applicable to offenses committed on or after that date.