An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-792

Filed 17 June 2026

Beaufort County, No. 22CR359280-060

STATE OF NORTH CAROLINA

v.

STEVEN JONES

Appeal by Defendant from judgment entered 23 January 2024 by Judge Wayland J. Sermons Jr. in Beaufort County Superior Court. Heard in the Court of Appeals 11 March 2026.

> *Attorney General Jeff Jackson, by Assistant Attorney General Joseph R. Mouer, for the State.*
>
> *Anton M. Lebedev, for the defendant.*

WOOD, Judge.

Steven Jones ("Defendant") appeals from judgment entered following a jury verdict finding him guilty of misdemeanor sexual battery. On appeal, Defendant argues the trial court erred by denying his motions to dismiss the charge of sexual battery for insufficient evidence and that there was a fatal variance between the

evidence the State presented at trial and the charging language in the arrest warrant. Defendant further argues the trial court erred by restricting him from interacting with the witnesses as a condition of his probation. After careful review of the record and applicable law, we hold Defendant received a fair trial free from error and that the trial court did not err in imposing the conditions of probation.

## I.    Factual and Procedural Background

On 8 December 2022, three arrest warrants were issued for Defendant, each for the misdemeanor charge of sexual battery against three different women. Relevant to this appeal, on 23 March 2023, Defendant was found guilty on two of the charges in Beaufort County District Court.[1]   On 28 March 2023, Defendant filed notice of appeal to the Superior Court. On 23 January 2024, trial commenced in the Superior Court for the two charges of sexual battery against Kelly and Cate.[2]

At trial, the State called the two victims as witnesses. Kelly testified she first met Defendant when he visited her home health care business office looking to hire care for a friend, Mr. Thompson ("Thompson"). Defendant worked as a caretaker for Thompson, performing tasks such as bringing him groceries and fixing things around his house. On 21 November 2022, Kelly went to Thompson's home after her employee, who was scheduled to care for Thompson that day, called out of work. Defendant

---

[1] The third charge of misdemeanor sexual battery was not included in the adjudication that is the subject of this appeal.

[2] Pseudonyms used to protect the identities of the victims.

arrived while Kelly was making Thompson oatmeal.  Kelly testified to the following interaction:

> [KELLY]: So when he came in, like I said, the TV wasn't working.  There was something wrong with the TV, so he was supposed to be coming there to fix the TV.  I went ahead and went into the kitchen to start making his breakfast, was boiling the water.  By that time, [Defendant] came in the kitchen where I was at and he took and came up against me and I pushed off.  Like, he put his hands around my hips.
>
> [STATE]: Okay.  If you could, please, stand, and could you describe for the jury where the hands were at?
>
> [KELLY]: Okay.  So, like, this was the stove here.  He came up behind me, and he put his hands on my hip - -
>
> [STATE]: Yes, ma'am.
>
> [KELLY]: -- so I automatically pushed him off.
>
> I asked him what he was doing, and then he was saying "Let me" -- let him show me something, and then I told him -- well, I was about to cuss him out.  I told him to go on about his business.
>
> He still came again, and then he tried -- he pulled my hair behind -- pulled my hair out of the way to try to kiss me on the back of my neck, and I was kind of pinned up against the stove with it boiling, and I had the water in my hand, so he kept saying, "Well, you don't know what you might like," or whatever.  I said, "My husband can do it better, my husband," and he was like, "You -- you know I can do it better than your husband," or whatever, and by that time I had the water in my hand, and I guess he thought about it.  I thought about it, throwing it on him, but I guess he thought about it, and he went on about his business, but what I noticed was that he turned the TV up in the living room, so all the TVs were blasting where you couldn't even hear anything.

Kelly stated she did not ask or want Defendant to pull her hair or kiss her on the neck.

On 1 December 2022, Cate, an employee of Kelly's home health care company, arrived at Thompson's home to provide care for him. Cate testified that when she first arrived, she and Thompson were the only ones there. However, later, while Thompson was asleep, the following interaction with Defendant occurred:

> [CATE]: [Defendant] had came in the house, and, you know, he didn't really say anything. He just picked me up out of the chair and carried me to - - to the dining - - to the den, and I was like - - I was tossed.
>
> There was a couch back there. I was tossed on the couch where I then had to fight him off for a good while until I finally got away, and I went into [Thompson's] room. He was sleep. I went to wake him up so it would - - it would stop.
>
> . . . .
>
> [CATE]: He came to the house, beelined straight to me, picked me - - picked me up out of the recliner, and kind of bear hugged me and picked me up, walked me all the way to the den . . . [a]bout 15 feet.
>
> . . . .
>
> [CATE]: I was kind of like tossed down on the couch, and then he - - his body was on top of my body.
>
> [STATE]: How did his body get on top of your body after he tossed you onto the couch?
>
> [CATE]: He - - he - - his body - - he just thrusted - - he just, you know, jumped on my body.
>
> . . .

> [STATE]: After tossing you on the couch could you describe what it felt like having [Defendant] on you?
>
> [CATE]: It was very, very, uncomfortable.
>
> I've never known him to, you know, act in such a way. I had to literally, you know, shove and push and fall to the ground and crawl to get away pretty much.

Cate further testified that she did not want Defendant to pick her up or make any of the other physical conduct described.

At the close of the State's evidence Defendant made a motion to dismiss the charges of sexual battery for insufficient evidence of every element of the charge, alleging that submission to the jury would violate Defendant's Fourteenth Amendment rights. Defendant further moved to dismiss the charges on the grounds that "as to each charge there is variance between the crime alleged in the indictment and any crime for which the State's evidence may have been sufficient to warrant submission to the jury, and that submission to the jury would, therefore, violate the Fifth, Sixth, and Fourteenth Amendment." The trial court denied the motions to dismiss. Defendant did not present evidence but renewed his motions to dismiss at the close of all evidence. The trial court again denied the motions.

The jury found Defendant not guilty of sexual battery on Kelly but found him guilty of sexual battery on Cate. The trial court sentenced Defendant to 150 days of imprisonment, which it suspended for 24 months of supervised probation. Additionally, the trial court imposed 37 days of imprisonment as a condition of special

probation, 100 hours of community service, a sex offender evaluation, and registration as a sex offender. The trial court further ordered Defendant "not assault, threaten, harass, be on the premises of the victim or [Kelly]" and be subject to a curfew for six months after he is released from his 37 day active sentence. On 26 January 2024, Defendant filed notice of appeal.

## II.  Analysis

Defendant raises three arguments on appeal. First, Defendant argues that the trial court erred by denying his motion to dismiss for insufficient evidence on the charge of sexual battery on Cate. Second, Defendant argues the trial court erred by denying his motion to dismiss on the grounds that there is a fatal variance between the evidence presented at trial and the language in the arrest warrant. Third, Defendant argues the trial court erred in restricting Defendant from interacting with Kelly and "possibly other individuals" as a condition of probation.

## A. Motion to Dismiss for Insufficient Evidence

Defendant argues the trial court erred by denying his motion to dismiss the charge of sexual battery as to Cate because the State failed to present sufficient evidence for the elements of sexual gratification and sexual contact. Specifically, Defendant argues that while "lifting, carrying, bear hugging, throwing onto a couch, being on top of her, and restraining her – can occur during certain sexual assaults – the described acts themselves do not include any inherently sexual behavior."

We review a motion to dismiss for insufficient evidence *de novo*, considering

the matter anew and freely substituting our own judgment for that of the trial court. *State v. Reaves*, 297 N.C. App. 877, 881, 911 S.E.2d 791, 794 (2025). When ruling on a defendant's motion to dismiss, the trial court must examine whether the State has presented substantial evidence of each essential element of the crime and that the defendant is the perpetrator. *Id.* at 880-81, 911 S.E.2d at 794. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 881, 911 S.E.2d at 794 (quoting *State v. Summey*, 228 N.C. App. 730, 733, 746 S.E.2d 403, 406 (2013)). The trial court must consider all evidence admitted "in the light most favorable to the State, giving the State the benefit to every reasonable inference and resolving any contradictions in its favor." *Id.* (quoting *State v. Miles*, 267 N.C. App. 78, 82, 833 S.E.2d 27, 30 (2019)). Additionally, "in borderline or close cases, our courts have consistently expressed a preference for submitting issues to the jury." *Id.* (quoting *State v. Blagg*, 377 N.C. 482, 489, 858 S.E.2d 268, 273 (2021)).

"A person is guilty of [misdemeanor] sexual battery if the person, for the purpose of sexual arousal, sexual gratification, or sexual abuse, engages in sexual contact with another person[] [b]y force and against the will of the other person." N.C. Gen. Stat. § 14-27.33. Sexual contact is defined by statute in relevant part as "[t]ouching the sexual organ, anus, breast, groin, or buttock of any person." N.C. Gen. Stat. § 14-27.20(5). This Court has stated the element of acting for the purpose of sexual gratification may be inferred "from the very act itself" in criminal cases

involving adults. *In re S.A.A.*, 251 N.C. App. 131, 135, 795 S.E.2d 602, 605 (2016). Touching is further defined by statute as "physical contact with another person, whether accomplished directly, through the clothing of the person committing the offense, or through the clothing of the victim." N.C. Gen. Stat. § 14-27.20(6).

Here, the State argues Cate's testimony that Defendant laid his body on top of hers and thrusted allows the inference to be made that his groin, through his clothes, touched some part of her body and it was for the purpose of sexual gratification. We agree. Cate testified, "I was kind of like tossed down on the couch, and then he - - his body was on top of my body," and "he just thrusted - - he just, you know, jumped on my body." We conclude the State, based on Cate's testimony, presented sufficient competent evidence from which a reasonable jury could find Defendant acted with the purpose of sexual gratification and engaged in sexual contact. *See* N.C. Gen. Stat. §§ 14-27.20(5), (6); N.C. Gen. Stat. § 14-27.33. Therefore, the trial court did not err by denying Defendant's motion to dismiss for insufficient evidence.

**B. Motion to Dismiss for Fatal Variance in Arrest Warrant**

Defendant argues there is a "fatal variance" between the charging language in the arrest warrant and the evidence presented at trial. Specifically, Defendant argues he was prejudiced by the variance because the arrest warrant stated he "*pinned* [Cate] down on the couch and *grinded* [his] body on [Cate]" when the facts presented tend to show he "picked [Cate] up, carried her to the den, threw her onto the couch, and got on top of her body." Defendant further argues he was prejudiced

by this variance because he was denied "constitutionally adequate notice" because "the arrest warrant only afforded him notice that the State was going to seek conviction based on pinning and pelvic grinding, but the State instead obtained conviction on a materially different set of facts, undermining [Defendant's] ability to mount an effective defense."

A motion to dismiss for a fatal variance is reviewed *de novo* to determine whether, in the light most favorable to the State, "there was substantial evidence (1) of each essential element of the offense charged, and (2) that the defendant is the perpetrator of the offense." *State v. Juran*, 294 N.C. App. 81, 85, 901 S.E.2d 872, 877 (2024) (quoting *State v. Collins*, 283 N.C. App. 458, 465, 874 S.E.2d 210, 215 (2022)).

> When the State fails to offer sufficient evidence to establish the defendant committed the criminal offense charged, a motion to dismiss is in order. For this reason, "a variance between the criminal offense charged and the offense established by the evidence" also warrants a motion to dismiss as the variance "is in essence a failure of the State to establish the offense charged." In order to prevail on such a motion, the defendant must show there existed "a fatal variance between the offense charged and the proof as to the gist of the offense."

*Juran*, 294 N.C. App. at 86, 901 S.E.2d at 877 (quoting *State v. Barnett*, 368 N.C. 710, 713, 782 S.E.2d 885, 888 (2016)).

While Defendant is correct that Cate did not use the words "pinned" or "grinded" while testifying to what happened, she did testify:

> [CATE]: I was kind of like tossed down on the couch, and then he - - his body was on top of my body.

> [STATE]: How did his body get on top of your body after he tossed you onto the couch?
>
> [CATE]: He - - he - - his body - - he just thrusted - - he just, you know, jumped on my body.
>
> . . .
>
> [CATE]: It was very, very, uncomfortable . . . I had to literally, you know, shove and push and fall to the ground and crawl to get away pretty much.

We hold a fatal variance does not exist between the arrest warrant and the evidence presented at trial. "Jumping" on top of a person and preventing her from getting away swiftly and "thrusting" on top of a person is not "materially different conduct" from the acts of pinning and grinding as Defendant asserts. Further, the arrest warrant clearly charges Defendant with sexual battery, and the elements of the charge are listed: "for the purpose of sexual arousal, sexual gratification engage in sexual contact . . . with another person, [Cate], by force and against the will of the other person." Moreover, sexual contact and sexual gratification can be proven in a number of ways and are not restricted to the acts of pinning and grinding. Therefore, the trial court did not err by denying Defendant's motion to dismiss for a fatal variance.

**C. Probation Conditions**

Lastly, Defendant attempts in several ways to argue the trial court erred by restricting him from interacting with Kelly as a condition of probation and further otherwise erred because the trial court's oral and written no-contact probation

conditions do not align exactly. Specifically, Defendant argues: (1) although he did not object at trial, the no-contact probation condition is reviewable because it is a sentencing error and statutorily preserved; (2) the no-contact provision is an overbroad restraint on his right to free speech because his conviction had no reasonable relationship to Kelly; and (3) the no-contact condition as written in the judgment is a clerical error, thus, the case must be remanded to the trial court to match the judgment to the oral ruling of the trial court. Defendant concedes his constitutional argument was not made at trial and asks this Court to invoke Rule 2. Defendant's arguments are without merit.

Defendant asserts that while "the [trial] court orally limited its restriction to two named individuals, the written judgment improperly expanded the prohibition to broader no-contact with all victims and prosecutorial witnesses and thus fails to conform to the sentence orally rendered at judgment." The trial court stated orally that Defendant shall "not assault, threaten, harass, be on the premises of [Cate] or [Kelly]," while the judgment states Defendant shall "not assault, threaten, harass, be found in or on the premises or workplace of, or have any contact with ANY VICTIMS OR PROSECUTING WITNESSES." Because Cate and Kelly were the only prosecuting witnesses in the case, there is no substantive difference between the trial court's oral condition and the judgment.

We decline to invoke Rule 2 to address Defendant's constitutional argument. *See State v. Vaughn*, __ N.C. App. __, __, 923 S.E.2d 881, 891 (2025) (discussing that

Rule 2 is intended to be invoked on limited occasions and is a discretionary determination made on a case-by-case basis). Further, we note that the prohibition to have no-contact with Kelly clearly bears a reasonable relationship to Defendant's conviction involving his conduct towards Cate. Cate works for Kelly and both women reported similar incidents with Defendant. The trial court did not err by imposing the no-contact condition as is written.

### III.    Conclusion

For the foregoing reasons, we hold the trial court did not err by denying Defendant's motions to dismiss. The State presented sufficient evidence to submit the charge of sexual battery to the jury and there was no fatal variance between the arrest warrant and the evidence presented. We conclude Defendant received a fair trial free from error. Further, the trial court did not err by including a no-contact provision as a probation condition.

NO ERROR.

Judges STROUD and ARROWOOD concur.

Report per Rule 30(e).