IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1160

Filed 17 September 2024

Johnston County, Nos. 21-CR-052221-500, 21-CR-052222-500, 21-CR-052223-500

STATE OF NORTH CAROLINA

v.

LORI ANN EVANS

Appeal by Defendant from judgment entered 25 May 2023 by Judge Thomas H. Lock in Johnston County Superior Court. Heard in the Court of Appeals 14 August 2024.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Phillip K. Woods, for the State-Appellee.*

> *Wake Forest University School of Law Appellate Advocacy Clinic, by John J. Korzen, for Defendant-Appellant.*

COLLINS, Judge.

Defendant Lori Ann Evans appeals from judgment entered upon a jury's guilty verdict of three counts of larceny by an employee. Defendant argues that the trial court erred by denying her motion to dismiss for insufficient evidence and erred in calculating her prior record level. Because the State presented sufficient evidence that Defendant acted with the requisite intent, the trial court did not err by denying Defendant's motion to dismiss. Because the trial court properly applied the relevant sentencing statute, the trial court did not err in calculating Defendant's prior record

level. We find no error.

## I. Background

Defendant was indicted on 4 April 2022 for three counts of larceny by an employee. When the case came on for trial, the State's evidence tended to show the following:

Defendant was the manager of a Dollar General store in Benson off N.C. Highway 50. On 13, 14, and 15 May 2021, Defendant was to deliver cash deposits to First Citizens Bank on behalf of Dollar General. On each of these days, Defendant indicated in the store deposit log that she was taking a bag of cash to deposit, and Dollar General's security footage captured Defendant leaving the store with a deposit bag. In total, Defendant took $11,000.83 from the store. On 16 May, Defendant made an entry into the store deposit log indicating that she had made the three deposits. The next day, Defendant quit her job. A cash audit later revealed that these deposits had not been made.

After being notified that the bank had never received the deposits, a loss prevention officer for Dollar General attempted to contact Defendant several times but was unsuccessful. The officer asked another store manager—who knew Defendant well—to contact Defendant; however, that store manager was also unsuccessful in doing so. The missing cash was then reported to the Johnston County Sheriff's Office. A Sheriff's deputy attempted to reach Defendant on several occasions but was unsuccessful.

Warrants were issued for Defendant's arrest on 28 May 2021. Sheriff's deputies attempted to serve Defendant at her last known home address in Benson, North Carolina; the home, however, was vacant when they arrived. Defendant was finally located in Chadbourn, North Carolina, on 5 September 2021 and served with arrest warrants.

More than six months later, on 29 March and 28 April 2022, Defendant made three deposits totaling $11,000.83 into Dollar General's bank account, using the same cash bags that she had used to remove money from the store in May 2021. The three cash bags contained twenty-six, thirty, and forty-four $100 bills, respectively. According to Dollar General's loss prevention officer, it was highly unusual for a deposit bag to contain more than twenty $100 bills.

At trial, Defendant admitted to leaving the store with the deposit bags and making an entry into the store deposit log indicating that she had made the three deposits. She testified, however, that she left the bags in her car for her daughter to deposit and assumed her daughter had made the deposits. When asked why she had not answered the calls from Dollar General's loss prevention officer and managers, Defendant testified that she did not answer because, at that time, she did not know any money was missing. Defendant further testified that once apprehended for the missing cash, she "scrape[d] and scrounge[d]" $11,000.83 by working and borrowing from family members and deposited this money into Dollar General's bank account.

Defendant's motions to dismiss the charges were denied. The jury convicted

Defendant of all three counts of larceny by an employee.

At sentencing, the trial court classified Defendant as a prior record level two and sentenced her to a term of five-to-fifteen months' imprisonment, suspended, and twenty-four months of supervised probation. Defendant gave an oral notice of appeal in open court.

## II. Discussion

### A. Motion to Dismiss

Defendant first contends that the trial court erred by denying her motion to dismiss because the evidence presented was insufficient to support a conclusion that Defendant intended to permanently deprive Dollar General of its money.

This Court reviews the trial court's denial of a motion to dismiss de novo. *State v. Summey*, 228 N.C. App. 730, 733, 746 S.E.2d 403, 406 (2013). In doing so, the reviewing court must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citation omitted). "If the evidence presented is circumstantial, the court must consider whether a reasonable inference of [the] defendant's guilt may be drawn from the circumstances." *Id.* at 379, 526 S.E.2d at 455. Once the court determines that a reasonable inference may be drawn, it is then for the jury to decide whether the facts satisfy the defendant's guilt beyond a reasonable doubt. *Id.* "Circumstantial evidence may withstand a motion to dismiss

and support a conviction even when the evidence does not rule out every hypothesis of innocence." *Id.* (quotation marks and citation omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78–79, 265 S.E.2d 164, 169 (1980) (citations omitted). When considering a motion to dismiss, the evidence must be considered in the light most favorable to the State, "giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192–93, 451 S.E.2d 211, 223 (1994) (citation omitted).

To survive a motion to dismiss a charge of larceny by an employee, the State must present sufficient evidence of the following elements:

> (1) the defendant was an employee of the owner of the stolen goods; (2) the goods were entrusted to the defendant for the use of the employer; (3) the goods were taken without the permission of the employer; and (4) the defendant had the intent to steal the goods or to defraud his employer.

*State v. Frazier*, 142 N.C. App. 207, 209, 541 S.E.2d 800, 801 (2001) (citations omitted); *see also* N.C. Gen. Stat. § 14-74 (2023). The intent required by the fourth element includes "both the intent to wrongfully take *and* the intent to permanently deprive the owner of possession." *State v. Spera*, 290 N.C. App. 207, 216, 891 S.E.2d 637, 644 (2023).

Direct evidence of a defendant's intent to permanently deprive the owner of

possession is not required; the requisite intent is often inferred from circumstantial evidence. *Id.* at 215, 891 S.E.2d at 644. For example, this intent can "be deemed proved if it appears [the defendant] kept the goods as his own [un]til his apprehension, or that he gave them away, or sold or exchanged or destroyed them . . . ." *State v. Smith*, 268 N.C. 167, 173, 150 S.E.2d 194, 200 (1966) (quotation marks and citation omitted); *see, e.g.*, *State v. Osborne*, 149 N.C. App. 235, 243, 562 S.E.2d 528, 534 (2002) (defendant's keeping the stolen goods among his own possessions until apprehension was sufficient evidence of the requisite intent); *State v. Allen*, 193 N.C. App. 375, 381, 667 S.E.2d 295, 299 (2008) (defendant's abandonment of the stolen item, demonstrating an indifference to whether the stolen item would ever be recovered by the victim, was sufficient evidence of the requisite intent).

Here, Defendant was entrusted with three bags of Dollar General's money totaling $11,000.83 between 13 and 15 May 2021. She made an entry into Dollar General's deposit log on 16 May 2021 indicating that she had deposited that money into the bank. In reality, she had not made those deposits and had no first-hand knowledge of anyone else making those deposits. The next day, Defendant quit her job.

Dollar General's loss prevention officer, a Dollar General store manager, and law enforcement officers attempted to contact Defendant on numerous occasions. All of those attempts failed. When law enforcement officers attempted to serve

Defendant with her arrest warrants at her home, her home appeared vacant. Ultimately, it took law enforcement over three months to locate Defendant, who was found in Chadbourn.

On 29 March and 28 April 2022, more than ten months after taking the cash out of the Dollar General store and indicating to Dollar General that the cash had been deposited in the bank, and more than six months after being arrested, Defendant deposited $11,000.83 into Dollar General's bank account. The denominations of the bills deposited were different from the denominations of bills typically deposited by Dollar General. Defendant admitted at trial that the cash she deposited in March and April 2022 was not the cash she took from the store in May 2021; the cash she had been entrusted to by the store was gone.

Defendant quit her job the day after she falsely indicated that she had deposited Dollar General's money into its bank account and left town. Considered in the light most favorable to the State, the evidence was sufficient to support a conclusion that Defendant intended to wrongfully take and permanently deprive Dollar General of the money she was entrusted with. *See Rose*, 339 N.C. at 192, 451 S.E.2d at 223.

Citing *Spera*, Defendant contends that her reimbursement of the stolen funds shows that she never intended to permanently deprive Dollar General of the money. Unlike in *Spera*, however, Defendant did not deposit any money into Dollar General's bank account until after she was arrested for three counts of larceny by an employee,

more than ten months after she had failed to deposit the money. *See, e.g., Spera*, 290 N.C. App. at 219–20, 891 S.E.2d at 646–47 (holding that there was insufficient evidence of a permanent deprivation, as the evidence tended to show that the defendant merely took the stolen car for a "joy ride" and returned the keys to the victim roughly thirty minutes after the taking). Defendant's contentions do not warrant dismissal for insufficient evidence. *See Fritsch*, 351 N.C. at 378, 526 S.E.2d at 455.

Because the State presented sufficient evidence of each element of the offense of larceny by an employee, the trial court did not err by denying Defendant's motions to dismiss.

**B. Defendant's Prior Record Level**

Defendant next contends that the trial court erred in calculating her prior record level for sentencing. Specifically, Defendant argues that by treating her 1999 misdemeanor conviction as a felony, the trial court breached her 1999 plea agreement, wherein she pled guilty to misdemeanor possession of methamphetamine after being charged with felony possession of methamphetamine.

A trial court's determination of a defendant's prior record level is a conclusion of law reviewed de novo review on appeal. *State v. Bohler*, 198 N.C. App. 631, 633, 681 S.E.2d 801, 804 (2009). Likewise, this Court reviews de novo whether the State breached a plea agreement and whether the trial court entered a judgment inconsistent with the terms of a plea agreement. *State v. Knight*, 276 N.C. App. 386,

390, 857 S.E.2d 728, 732 (2021).

"The prior record level of a felony offender is determined by calculating the sum of the points assigned to each of the offender's prior convictions . . . ." N.C. Gen. Stat. § 15A-1340.14(a) (2023). One point is assigned for misdemeanor convictions. *Id.* § 15A-1340.14(b) (2023). Felony convictions are assigned more points, depending upon the class of felony, with two points assigned to each prior felony Class H or I conviction. *Id.* For purposes of determining a defendant's prior record level, "the classification of a prior offense is the classification assigned to that offense at the time the offense for which the offender is being sentenced is committed." *Id.* § 15A-1340.14(c) (2023).

The State presented to the trial court a computerized criminal history printout indicating that Defendant was charged in 1999 with felony possession of methamphetamine and misdemeanor possession of drug paraphernalia; pled "guilty to a lesser degree" to misdemeanor possession of methamphetamine; and was sentenced to forty-five days of confinement, suspended for one year of unsupervised probation, and ordered to pay a $100 fine and court costs. That same year, however, the North Carolina General Assembly amended our general statutes by striking the offense of misdemeanor possession of methamphetamine and classifying the possession of any amount of methamphetamine as a felony. *See* 1999 N.C. Sess. Laws 370. By the plain language of N.C. Gen. Stat. § 15A-1340.14(c), because possession of methamphetamine was classified as a Class I felony on the date Defendant

committed larceny by an employee in the present case, the trial court did not err by assigning her 1999 conviction two points for the purpose of determining her prior record level. *See* N.C. Gen. Stat. § 15A-1340.14(c); *see also State v. Beck*, 359 N.C. 611, 614, 614 S.E.2d 274, 277 (2005) ("If the statutory language is clear and unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning.") (citation omitted).

Defendant argues that by classifying her prior conviction as a felony, the trial court breached her 1999 plea agreement. In essence, Defendant argues that she did not get the benefit of her earlier bargain. We disagree.

"A plea agreement is treated as contractual in nature, and the parties are bound by its terms." *State v. Russell*, 153 N.C. App. 508, 509, 570 S.E.2d 245, 247 (2002) (citation omitted). Plea agreements differ from ordinary contracts, however, because a defendant waives various constitutional rights by pleading guilty to a crime. *Knight*, 276 N.C. App. at 390, 857 S.E.2d at 732. Therefore, the plea bargain process "must be attended by safeguards to [e]nsure the defendant receives what is reasonably due in the circumstances." *Id.* (quotation marks and citation omitted).

On this record, Defendant was charged with felony possession of methamphetamine and misdemeanor possession of drug paraphernalia. She "bargained" for a conviction to a lesser degree of possession of methamphetamine, dismissal of the possession of drug paraphernalia charge, and a sentence in accordance with that agreement. Defendant thus received "what [was] reasonably

due in the circumstances." *Id.*

N.C. Gen. Stat. § 1340.14(c) was enacted in 1993, six years before Defendant pled guilty to possession of methamphetamine. *See* 1993 N.C. Sess. Laws 538. With the passage of 1999 N.C. Sess. Laws 370, Defendant was on notice that, should she be convicted of an offense in the future, her conviction for possession of methamphetamine would be assigned two points for the purpose of determining her prior record level. The language of N.C. Gen. Stat. § 15A-1340.14(c) is clear and unambiguous: Defendant's prior offense must be classified as it would be classified at the time she committed the offense for which she is currently being sentenced. Additionally, as the trial court noted below, Defendant is not now a convicted felon. "But for purposes of calculating her prior record level, she is a prior record level two because two points would be assigned to that offense. Since [possession of methamphetamine] is now a felony."

Accordingly, because the trial court properly applied N.C. Gen. Stat. § 15A-1340.14(c) and did not otherwise breach Defendant's 1999 plea agreement, the trial court did not err in calculating Defendant's prior record level.

## III.    Conclusion

Because the State presented substantial evidence of each element of the charge of larceny by an employee, the trial court did not err by denying Defendant's motion to dismiss. Because the trial court did not breach Defendant's prior plea agreement, the trial court did not err in calculating Defendant's prior record level.

NO ERROR.

Judges MURPHY and FLOOD concur.